Argued and submitted February 23, judgment vacated and remanded on appeal; reversed and remanded on cross-appeal August 5, 1998, petition for review denied February 2, 1999 (328 Or 275)

John S. NOLAN,
*Appellant,*

*v.*

JACKSON NATIONAL LIFE
INSURANCE COMPANY,
a Michigan corporation,
*Respondent.*

JACKSON NATIONAL LIFE
INSURANCE COMPANY,
a Michigan corporation,
*Third-Party Plaintiff*
*Cross-Appellant,*

*v.*

JOHN S. NOLAN INSURANCE, INC.,
an Oregon corporation,
*Third-Party Defendant*
*Cross-Respondent.*

(9501-00583; CA A94710)

963 P2d 162

David J. Sweeney argued the cause for appellant-cross-respondent. With him on the briefs were Paul G. Dodds and Brownstein, Rask, Arenz, Sweeney, Kerr & Grim.

Scott K. Kaplan argued the cause for respondent-cross-appellant. With him on the brief were Keith M. Garza and Stoel Rives LLP.

Before Riggs, Presiding Judge, and Landau and Wollheim,* Judges.

LANDAU, J.

---

* Wollheim, J., *vice* Leeson, J., resigned.

**LANDAU, J.**

In this declaratory judgment action, plaintiff John S. Nolan, an insurance agent, seeks to have himself declared one of the assignees and beneficiaries of a term life insurance policy issued to one of his clients. Defendant insurer, Jackson National Life Insurance Company (Jackson National), contends that Nolan's client canceled the policy and that there is no valid policy of which Nolan is now an assignee or beneficiary. The insurer cross-claimed against Nolan based on its agency agreement with him, which provides for indemnity arising out of Nolan's "unauthorized acts." Jackson National alleged that attempting to procure an interest in the life of a client is such an unauthorized act.

The trial court entered summary judgment in favor of Jackson National on the ground that the insurance policy of which Nolan claims to be an assignee and beneficiary was terminated. The cross-claim went to trial, and the court ruled that Jackson National was not entitled to recover as a matter of law because Nolan's attempt to procure an interest in the life of his client did not constitute an "unauthorized act" within the meaning of the agency agreement.

Nolan appeals, assigning error to the trial court's entry of summary judgment on his declaratory judgment claim. Jackson National cross-appeals, assigning error to the trial court's determination that it is not entitled to recover for indemnity under its agency agreement with Nolan. On the appeal, we conclude that the trial court's disposition of the merits of the declaratory judgment was correct. We nevertheless vacate the judgment and remand for further proceedings, because not all assignees and beneficiaries were joined in the declaratory judgment action. On the cross-appeal, we conclude that the trial court erred and reverse and remand.

The relevant facts are not in dispute. In April 1987, Jackson National issued a $1,000,000 term life insurance policy, number 0010367580, insuring the life of Teddy Moore, naming as owner and beneficiary the Teddy Moore Life Insurance Trust (Trust).

Teddy Moore's wife, Sherry Moore, is the trustee of the Trust. The policy listed the class of risk as "standard."

The term policy permitted conversion on the same class of risk without evidence of insurability:

> "While this Policy is in force, it may be converted to any whole life or endowment policy without evidence of insurability. * * * The new policy will be issued on the same class of risk as this Policy for the amount of insurance then in effect."

Later in 1987, Teddy Moore suffered a disabling stroke that left him unable to work. In September 1990, Sherry Moore determined that they could no longer afford the term life insurance policy described above. She contacted Nolan to arrange to cancel the policy. Nolan told Sherry Moore that it would be a good investment to convert the term policy to a whole life policy. Sherry Moore told Nolan that they could not afford the $44,000 yearly premium for a $1,000,000 whole life policy. In response, Nolan offered to pay a portion of the premium in exchange for an interest in the policy, and Sherry Moore agreed. Consequently, Sherry Moore signed a form requesting that the term life policy be converted to a "Ultimate Life II/New Preferred or Ultimate II" preferred whole life policy in the amount of $1,000,000, with the Trust as the owner of the policy. In response to the conversion request, Jackson National issued a standard whole life policy, number 0016751680, not the preferred policy that was requested.

Nolan contacted Jackson National to complain that the standard whole life policy was not the preferred policy that he and Sherry Moore had requested. He informed Jackson National that he and the Moores were rejecting the standard whole life policy.

Sherry Moore became concerned that Nolan would not pay his share of the premium on the standard whole life policy. She asked Nolan to change the policy to a face amount of $100,000. She and Nolan met on October 26, 1990, to discuss her concerns. Nolan brought to the meeting a document that declared that the $1,000,000 policy would be divided into two portions: a $100,000 portion in the name of the Trust and a $900,000 portion in Nolan's name, so that the possibility that Nolan would not pay would not affect the insurance that Sherry Moore wanted. The document also declared that, if Nolan could not obtain preferred coverage, he would pay the

difference in premiums for the standard policy. Sherry Moore signed the document.

Nolan then sent change of beneficiary and owner- ship forms and documents to Jackson National to accomplish the desired changes in the policy. Meanwhile, neither Sherry Moore nor Nolan made premium payments on either the old term policy or the new whole life policy. Jackson National responded with requests for proof that Nolan had an insura- ble interest in Teddy Moore's life and that Teddy Moore was competent. It also advised that, because of the lack of pre- mium payments, the term life policy had lapsed and that pay- ments would be required for the policy to be reinstated.

At that point, Sherry Moore decided that she did not want Nolan to have an interest in her husband's life. She con- tacted Jackson National and said that she did not want to reinstate the term policy. She did not pay premiums on the whole life policy, thus allowing that policy to lapse. She con- tacted Nolan and informed him that she did not want any Jackson National policy.

In December 1990 or January 1991, Sherry Moore met with Nolan and his attorney, Edward J. Murphy, Jr., who threatened to sue Sherry Moore if she refused to sign a document instructing Jackson National to process the change of beneficiary forms. Sherry Moore refused to sign the document. On January 29, 1991, Murphy wrote to Jackson National claiming that he represented both the Moores and Nolan, stating that the term policy had never lapsed and threatening a lawsuit if Jackson National did not process the change of beneficiary and ownership requests that previously had been submitted. Murphy never represented the Moores. Sherry Moore notified both Nolan and Jackson National on several occasions that she did not intend to continue any Jackson National life insurance. No premiums were paid on the whole life policy. Nolan made attempts to pay premiums on the term life policy, but Jackson National refused those payments.

In January 1995, Nolan initiated this action for declaratory relief against Jackson National. He requested a declaration that Jackson National is obligated to change the ownership and beneficiary designations of the original term

life insurance policy, number 0010376580, to reflect that Nolan is the owner and beneficiary of $900,000 of the insurance. Jackson National cross-claimed against John S. Nolan, Inc. (Nolan, Inc.), Nolan's employer, seeking indemnity based on the terms of its agreement with Nolan, Inc. Jackson National alleged that the agreement provided for indemnification from any damages or costs resulting from "any unauthorized act or transaction" by Nolan, Inc.'s employees and that Nolan's attempt to procure an interest in the life of a client constituted such an "unauthorized act."

Jackson National moved for summary judgment on Nolan's claim, asserting three grounds for its motion: that the term life policy under which Nolan sought to recover had been terminated when it was converted to a whole life policy and was never reinstated; that Nolan was not entitled to issuance of a new insurance policy on the life of Teddy Moore because he had no insurable interest; and that the change of ownership and beneficiary requested by Nolan were subject to approval by Jackson National, which properly refused approval because of Jackson National's policy that its agents not acquire interests in their client's lives. Nolan responded that the term policy never had been converted successfully to the whole life policy issued by Jackson National because the whole life policy was issued at "standard" rather than "preferred" rates. Nolan also moved for summary judgment, arguing that the uncontroverted facts established that the life insurance policy was transferred legally to Nolan and that Jackson National wrongfully refused to honor the transfer and issue a new policy. Jackson National then filed a cross-motion for summary judgment on its indemnity claim. The trial court denied all motions for summary judgment.

Jackson National later filed a second motion for summary judgment, based on evidence discovered after the hearing on the first motions for summary judgment. In support of its second motion, Jackson National introduced a copy of the original term life policy, showing that it had been issued as a "standard" rather than a "preferred" policy and arguing that, by the policy's own terms, neither the Moores nor Nolan was entitled to issuance of a whole life "preferred" policy rather than a whole life "standard" policy. Jackson

National then reiterated its first argument that it was entitled to prevail as a matter of law because the term policy no longer existed, having been converted to a whole life policy, which later lapsed. Shortly before the hearing on the second motion for summary judgment, Nolan attempted to submit a supplemental affidavit containing calculations alleged to show that the original premium paid by the Trust for the term policy could have been consistent with a preferred rather than a standard policy. That affidavit also included as an attachment a form letter from Jackson National to the Trust in April 1991, stating that Jackson National had received the Trust's request to terminate policy number 0010367580 and noting that, if the premiums were not paid, the policy would lapse and terminate without value. Nolan argued that the April letter demonstrated that the issuance of the whole life policy had not automatically terminated the term life policy. Jackson National objected to consideration of the letter on the ground that it had not had time to respond to it, as provided by ORCP 47 C. The trial court refused to consider Nolan's affidavit and attached letter on the ground that it had not been filed in a timely manner.

The trial court granted Jackson National's motion for summary judgment on the following grounds:

> "Defendant's motion for summary judgment is granted on the grounds that defendant has presented to the Court undisputed facts that plaintiff requested that defendant convert the term life insurance policy at issue to whole life and that defendant did convert the term life insurance policy to whole life. Defendant presented to the Court legal authority that plaintiff's conversion request terminated the term life insurance policy. Plaintiff presented no legal authority to the contrary. Defendant presented undisputed facts that plaintiff did not follow the contractual procedures necessary to reinstate the term life insurance policy and that under the terms of the insurance contract, the policy can no longer be reinstated. Consequently the insurance policy in which plaintiff claims an interest in this action no longer exists."

Jackson National's cross-claim for indemnity was tried to the court. The trial court, applying Michigan law,

concluded that the language "any unauthorized act" contained in the indemnity provision referred only to acts specifically prohibited elsewhere in the agreement, not to other acts that are contrary to law. Accordingly, the court concluded that Jackson National was not entitled to indemnity from Nolan, Inc., for the actions of its agent Nolan, because the actions leading up to the present lawsuit were not specifically prohibited by the terms of the agreement.

On appeal, Nolan contends that the trial court erred in granting Jackson National's motion for summary judgment. He begins by arguing that the trial court should have considered the letter attached to Nolan's affidavit, which was submitted to the court the day before the summary judgment hearing. That argument may be disposed of briefly.

■ ORCP 47 C provides, in part, that when a party files affidavits and supporting documents opposing a motion for summary judgment, the "moving party shall have five days to reply." ORCP 47 C also provides that the court "shall have discretion to modify these stated times." It is undisputed that Jackson National did not have five days to respond to Nolan's affidavit and supporting documents. Nolan insists that the trial court abused its discretion in refusing to consider his late filing, arguing in essence that Jackson National could not have been prejudiced by the late filing because it would not have been able to come up with any evidence that would have refuted the information contained in Nolan's late filing. Nolan cites no authority for the proposition that a trial court is required to consider affidavits or documentation submitted in an untimely manner unless it makes specific findings about how the opposing party would be prejudiced, and we do not agree with the proposition. The trial court did not abuse its discretion by refusing to consider Nolan's untimely filing.

We next turn to Nolan's argument that the trial court erred in granting Jackson National's motion for summary judgment. The trial court reasoned that, because the term policy had been converted into a whole life policy at the request of the Trust and never was reinstated after the Trust rejected the whole life policy, Jackson National could not be required to process the change of ownership and change of beneficiary on a policy that no longer existed.

Nolan argues that the term policy never lapsed because the whole life policy that Jackson National converted it into was not the "Ultimate Life II/New Preferred" policy that Sherry Moore initially had requested. Nolan points out that premiums were not paid on the whole life policy that Jackson National issued. While that is certainly true, it is not dispositive of whether the term life policy was successfully converted into the whole life policy. No premiums were paid by the Trust on either policy after the events in question here occurred, which is not surprising in light of the fact that the Trust had indicated that it did not want either policy. Moreover, it is undisputed that, when Sherry Moore received the letter from Jackson National explaining that she would need to sign a reinstatement form to reinstate the term life policy that had been converted, Sherry Moore told Jackson National that the Trust did not want to reinstate the term life policy.

Given those facts, Nolan cannot prevail. Sherry Moore requested that the term life policy be converted into a whole life policy. Under the provisions of the term life policy, Jackson National was required to honor that conversion request by issuing a whole life policy on the same class of risk without new evidence of insurability. Jackson National issued the whole life policy to which the insured was entitled: a "standard" whole life policy. The conversion of the term life policy to the whole life policy to which the insured was entitled under the contract had the effect of canceling the term life policy.

On the latter point our opinion in *Eifert v. Fortis Benefits Ins. Co.*, 128 Or App 359, 876 P2d 343 (1994), is instructive. In that case, the insured requested, pursuant to the terms of his policy, that the insurer pay to the insured the cash surrender value of the policy. *Id.* at 361-62. Before the insured received the check for the cash surrender value of the policy, he died. *Id.* at 362. The insurer refused to pay the full face value of the policy to his estate. *Id.* This court rejected the estate's argument that the policy remained in effect until the insured received the cash surrender value. We concluded that a request for cash surrender value

"is an expression of intent to enforce a contractual right under the express terms of the policy. A life insurance policy such as defendant's, which provides a right to the policy's cash surrender value in exchange for its surrender, is effectively canceled when the insurer receives the insured's letter requesting cancellation and the cash surrender value."

*Id.* at 362-63 (citing Appleman 3A, *Insurance Law and Practice* § 1757, 34 (1967)). In *Eifert,* we held that the insured's request for the cash surrender value of the policy, which the insurer was required to honor by the terms of the contract, had the effect of canceling the policy.

The same rationale applies here. The insured had a contractual right under the term life policy to convert it into a whole life policy on the same class of risk. The insurer honored that request by converting the term life policy into the whole life policy to which the insured was entitled pursuant to the contract. The conversion had the effect of canceling the term life policy and replacing it with the whole life policy. Nolan asserts no interest in the whole life insurance policy. He claims to have acquired an interest in the term life insurance policy at a time when that policy no longer existed. The trial court correctly concluded that Nolan is not entitled to a declaration that he is the beneficiary of a $900,000 life insurance policy that does not exist.

■ Nevertheless, we are unable simply to affirm the trial court. This action was brought under the Declaratory Judgments Act, ORS chapter 28. ORS 28.110 provides that "all persons *shall* be made parties who have or claim any interest which would be affected by the declaration[.]" (Emphasis added.) That requirement has been held to be jurisdictional; failure to join an interested party renders any judgment void. *Stanley, Adm. v. Mueller,* 211 Or 198, 210, 315 P2d 125 (1957) (failure to join will beneficiaries in declaratory judgment action brought by administratrix of decedent's estate against decedent's spouse presented no justiciable controversy); *see also Wright v. Hazen Investments, Inc.,* 293 Or 259, 264, 648 P2d 360 (1982) (assignee of leasehold contract was required to be joined under ORS 28.110); *Farmers Ins. Co. v. Lotches,* 276 Or 81, 85-86, 554 P2d 169 (1976) (in insurer's declaratory judgment action against

claimants on an insurance policy, insured was required to be joined under ORS 28.110); *Kaiser Foundational Health Plan v. Doe*, 138 Or App 428, 433, 908 P2d 850, *rev den* 324 Or 394 (1996) (in declaratory judgment action concerning enforceability of oral contract, all parties to the agreement were required to be made parties to the action); *Futrell v. Wagner*, 96 Or App 27, 32, 771 P2d 292, *rev den* 308 Or 158 (1989) (where it was apparent from the record that unjoined assignee of contract might claim an interest, failure to join him as necessary party was a jurisdictional defect).

■ Nolan's claim that he is owner of $900,000 of the Trust's term insurance policy on Teddy Moore's life therefore is not justiciable, unless the Trust is made a party to this action. The Trust has an interest that would be affected by a declaratory judgment that the term insurance policy does or does not exist. It also has an interest in who the beneficiary of the policy might be. In general, the remedy in a case in which a necessary party has not been joined is to remand with instructions to dismiss the action unless the necessary party is joined within a reasonable time. In some cases, however, the appellate courts have determined that the absent party's interests were protected by one of the named parties and remanded with instructions simply to add the absent party and enter an amended judgment. *See, e.g., Wright*, 293 Or at 265-66 (discussing propriety of that remedy); *Marx v. Lenske/Krause*, 263 Or 90, 500 P2d 715 (1972) (applying that remedy).

We recently discussed that issue in *Kaiser*. In that case, the plaintiff sought enforcement of an oral agreement with the plaintiff, but other parties to the oral agreement had not been joined. *Kaiser*, 138 Or App at 430. On reconsideration, we considered the implications of the absence of parties to the contract in question and concluded that those parties were required to be joined under ORS 28.110. Citing *Marx*, we stated:

> "[A]uthority to enter a declaratory judgment under ORS 28.110 exists when there is an identity of interests between the absent parties and one of the parties to the litigation, so that the interests of the absent parties are protected. In *Marx*, the plaintiff brought an action against a partnership, but named only one of the partners as a defendant. When

the plaintiff later moved to join all the partners as defendants, the trial court refused to do so. The court said that, because the other partners were necessary parties, it would normally remand to the trial court to join them. However, it determined that such a remedy was not required, because the interests of the unincluded partners had been sufficiently protected in the suit. It noted, '[T]he issues [regarding the partnership's actions] * * * were fully litigated.' [*Marx*, 263 Or] at 96. It then ordered the action to be remanded to the trial court with instructions to enter an order adding the unincluded partners as parties, and thereafter to enter judgment in accordance with the court's opinion.

"Because we have concluded that immediate dismissal is not required, the only question left is whether we should remand to the trial court to join the absent parties and enter judgment in accordance with our prior opinion as the court did in *Marx* or whether we should order the trial court to dismiss unless the absent parties are joined within a set time as the court did in *Stanley* and *Wright*. From the record before us, it appears that the missing parties to the settlement agreement have an identity of interest similar to the parties in *Marx*. However, because [the absent parties] are discrete parties and may have no privity with each other or with plaintiff, prudence requires they have an opportunity to be heard."

*Id.* at 433. We then remanded for dismissal unless the absent parties were joined, adding that if the absent parties were joined, "the trial court is to enter judgment in accordance with our prior opinion unless it determines that there is no identity of interests between [the absent parties] and plaintiff." *Id.*

■    This case is similar to *Kaiser*. The Trust, as owner and beneficiary of the disputed insurance contract, is a necessary party under ORS 28.110. It appears from the record, however, that Jackson National may have protected the Trust's interests in this litigation. Still, their interests may not be identical. We conclude, as we did in *Kaiser*, that prudence requires that the Trust have an opportunity to be heard. Accordingly, on Nolan's claim, we remand and instruct the trial court to dismiss the claim unless the Trust is joined within a time to be set by the court; if the Trust is

joined, the trial court will enter judgment in accordance with this opinion unless it determines that there is insufficient identity of interest between the Trust and Jackson National.

We next consider whether the trial court erred in denying Jackson National's cross-claim against Nolan, Inc., for indemnity for its expenses in defending against this action. As noted, the trial court based its conclusion that Jackson National was not entitled to indemnity on its construction of the brokerage agreement between Jackson National and Nolan, Inc., as requiring indemnity only for certain unauthorized acts specified within the agreement. On cross-appeal, Jackson National argues that the trial court erred in its conclusion that the broker agreement provided for indemnity only in cases where the broker engaged in certain unauthorized acts specified in the broker agreement.

Because the trial court dismissed Jackson National's cross-claim for indemnity without prejudice pursuant to ORCP 54 B(2), we review to determine whether Jackson National had established a *prima facie* case, viewing the evidence in the light most favorable to Jackson National. *Davis v. United States Employers Council, Inc.*, 147 Or App 164, 166, 934 P2d 1142, *rev den* 325 Or 368 (1997).

In construing the broker agreement, we apply Michigan law, as the agreement itself provides and as all parties agree. Under the law of Michigan, an indemnity contract generally is construed in the same manner as any other contract. *Triple E Produce v. Mastronardi Produce*, 209 Mich App 165, 172, 530 NW 2d 772, *rev den* 450 Mich 899 (1995). In cases involving indemnity contracts, the court looks not only to the language of the contract, but also to "the situation of the parties and circumstances surrounding the contract." *Frank v. MSI Const. Managers, Inc.*, 208 Mich App 340, 343, 527 NW 2d 79 (1995).

In this case, the trial court was required to determine the meaning of the phrase "any unauthorized act," as used in the indemnity contract. The court refused to admit evidence offered by Jackson National concerning industry-wide practices concerning what insurance brokers are and are not authorized to do. The court further concluded that it could not consider extrinsic evidence of intent in interpreting the

contract. We conclude that, under Michigan law, a party is entitled to present extrinsic evidence concerning the situation and circumstances surrounding the formation of an indemnity contract. We conclude that the trial court erred in excluding evidence of industry standards concerning authorized and unauthorized acts of insurance brokers, as such evidence is relevant to determining the meaning the parties intended for the phrase "any unauthorized act." Because that error may have affected the trial court's conclusion that the only unauthorized acts for which Jackson National was entitled to indemnity were those specifically mentioned in the contract, we conclude that it was not harmless.

On appeal, judgment vacated and remanded for proceedings in accordance with this opinion. On cross-appeal, reversed and remanded.