No. 22       April 8, 2021       497

IN THE OREGON TAX COURT
REGULAR DIVISION

Scott SALISBURY,
Trustee,
*Plaintiff,*
*v.*
DEPARTMENT OF REVENUE,
*Defendant.*
(TC 5400)

Following the dismissal of this case in the Magistrate Division due to Plaintiff's refusal to allow the county assessor to inspect the property at issue, Defendant Department of Revenue (the department) sought to limit the Regular Division's consideration of the facts to those before the magistrate and to limit the Regular Division's review of the dismissal to an abuse of discretion standard. The court concluded that, because the Magistrate Division is not a court of record, the Regular Division may review newly submitted facts that are both relevant to dismissal and extant at the time the magistrate decided to dismiss the appeal. Further, the Regular Division is not required to apply an abuse of discretion standard to a magistrate's decision. Upon review of the facts, the court concluded that the magistrate's dismissal of Plaintiff's appeal was reasonable because of Plaintiff's refusal to comply with the magistrate's order compelling inspection of the property.

Oral argument on Defendant's Motion for Summary Judgment was held remotely on January 15, 2021.

James C. Wallace, Senior Assistant Attorney General, Department of Justice, Salem, filed the motion and argued the cause for Defendant.

Scott Salisbury, Plaintiff, filed a response and argued the cause *pro se.*

Decision for Defendant rendered April 8, 2021.

**ROBERT T. MANICKE, Judge.**

### I.   INTRODUCTION

Plaintiff (taxpayer) appeals from a Magistrate Division decision in TC-MD 190056G dismissing the complaint in his appeal of property tax assessments for tax years 2014-15 through 2018-19. The magistrate dismissed taxpayer's complaint because taxpayer refused to comply with the court's order compelling taxpayer to allow representatives

of the Deschutes County Assessor to inspect the property. Defendant Department of Revenue (the department) seeks summary judgment that the appeal to this division be dismissed on the ground that the magistrate acted within his discretion based on the facts before the magistrate.

A.  *Facts*

The following facts specifically relevant to the magistrate's dismissal order are, unless otherwise noted, undisputed. The property at issue is land and improvements in Deschutes County. When taxpayer bought the property in 2013,[1] it included one building and three sheds, along with certain site preparation improvements. As of May 2015, permits had been pulled to construct structures referred to as a "horse barn" and a "riding arena." As of May 2016, a permit had been pulled to construct a single-family dwelling. Representatives of the assessor's office inspected the property in March 2015, May 2016, and April 2017.[2] During the April 2017 inspection, the assessor's representative determined that the barn was 100 percent complete. During the same April 2017 inspection, the assessor's representative initially determined that the riding arena was 50 percent complete; however, in late 2017 taxpayer informed the assessor's office that construction of the riding arena had not yet started and supplied the assessor with photographs of trusses on the ground and building material not yet used. In response, the assessor removed the riding arena from the roll. During the April 2017 inspection, the assessor also determined that construction of the single-family residence was 61 percent complete. Taxpayer disagrees as to the residence, stating that it was "complete besides flooring in the living room/master bedroom *** and some finish tile work in the master bath."

At each inspection, taxpayer or his spouse met with the assessor's representative. During the 2016 inspection, the representative met only with taxpayer's spouse, and

---

[1] Taxpayer stated that he and his spouse own the property through a revocable trust.

[2] At oral argument taxpayer also mentioned an inspection in 2014. Neither party submitted evidence of an inspection in 2014. In light of the other evidence, the court does not consider a possible 2014 inspection material to this order.

the representative took photographs of improvements. The accounts of the assessor's representative and of taxpayer's spouse differ sharply as to the photographs. The assessor's representative states that he obtained permission before taking them. Taxpayer's spouse denies that the representative asked permission. She states that she was unaware at the time that he took any photographs and that she would not have given permission if asked, explaining that, because of taxpayer's work in law enforcement and their prior experience, the family does everything to avoid advertising their place of residence. During the 2017 inspection, the assessor's representative asked to take photographs of improvements, but taxpayer expressed concerns, and the representative did not take photographs.[3]

Taxpayer asserts that, in November 2017, because he had not received his property tax statement for tax year 2017-18, he viewed the assessor's website to find a way to make payment. While there, he noticed that the assessor's records included "a building that never existed." Taxpayer called the assessor's office, took some photographs of the portion of the property in question, and sent the photographs to the assessor to support his point. Within a few days, an assessor representative called taxpayer and agreed to correct the issue. In the meantime, taxpayer concluded that the assessor had applied an erroneously high square footage for the building that existed when taxpayer bought the property, and taxpayer also concluded that the value the assessor had reported for the horse barn was excessive due to various procedural errors. A representative of the assessor informed taxpayer that it was too late to correct the latter two issues and that taxpayer would have to appeal to the board of property tax appeals (BOPTA).

Taxpayer filed an appeal with the BOPTA for tax year 2017-18, which culminated in a hearing held February 23, 2018. Before the hearing, taxpayer conducted his own research and had several conversations with assessor personnel to obtain information about how the assessor had

---

[3] Taxpayer's account differs from those of the assessor personnel regarding the degree of access and duration of certain of the inspections; the court considers these differences immaterial to the issue at hand.

valued the property and to discuss points of disagreement. At the BOPTA hearing, taxpayer asserts that he had less than 10 minutes to present his case. The assessor's representative then distributed a packet of materials, including photographs from the 2016 inspection that included taxpayer's "personal equipment and vehicles." Taxpayer learned at that moment that the photographs had been taken and was shocked. Taxpayer asserts that, at that point his "faith and confidence in the honesty and transparency" of the assessor's office diminished because he perceived a "pattern of dishonesty" and "disregard for personal private property." Taxpayer felt "there was no value in allowing the Deschutes County Assessor's Office on our property."

1.   *Case TC-MD 180079R (not appealed)*

On March 12, 2018, taxpayer appealed the resulting BOPTA order to the Magistrate Division in what became TC-MD 180079R,[4] involving tax years 2014-15, 2015-16, and 2017-18.[5] At the initial case management conference on April 25, 2018, taxpayer refused to allow a site inspection. The magistrate advised the parties to try to resolve inspection disputes without court intervention. On May 7, 2018, the assessor moved to dismiss the case based on taxpayer's refusal to allow an inspection, citing an email from taxpayer that stated: "'[N]o one from the Deschutes County Assessor's Office, or representative of, will ever be allowed on our property again.'" The magistrate denied the assessor's motion as premature because the court had not at that point issued an order requiring taxpayer to submit to an inspection. The magistrate instead treated the assessor's motion to dismiss as a motion to compel a site inspection and ordered taxpayer to contact the assessor to schedule an inspection within 14 days, stating that if taxpayer did not cooperate the court would grant a new motion to dismiss

---

[4] The appeal in TC-MD 180079R apparently was filed in the name of taxpayer and his spouse. For simplicity, when discussing TC-MD 180079R, the court hereafter refers to both spouses collectively as "taxpayer."

[5] The cited portion of the exhibit is a copy of the magistrate's Final Decision of Dismissal in TC-MD 180079R. That decision recites that taxpayer and his spouse filed their complaint in the case on March 12, 2017. The court has determined that this is a typographical error and that the complaint in TC-MD 180079R was filed on March 12, 2018.

absent extraordinary circumstances. On June 11, 2018, the assessor filed a new motion to dismiss. The court held another case management conference on June 18, 2018, at which the court asked taxpayer the nature of his concerns about the inspection. Taxpayer stated that he had security concerns about pictures of his property due to his work in law enforcement. The court suggested that a protective order could limit public dissemination of any information. Taxpayer replied that any order would be insufficient to protect his family. The court then ordered taxpayer to file a response to the assessor's motion to dismiss, no later than June 25, 2018, explaining why the court's suggestion of a protective order would be insufficient to protect taxpayer's security needs. Taxpayer filed a response stating in part: "'A protective order is not a guarantee that information can not be accessed. Any court ordered protection or sealed document still exist in both the legal and physical sense. *** [A]nother court order can access those records and documents.'"[6]

The magistrate in TC-MD 180079R concluded that the assessor's request for a site inspection appeared reasonably calculated to lead to discoverable evidence necessary for trial and stated that taxpayer's refusal to consider any court-fashioned protective order left the court with "few choices," pointing out that a trial based only on evidence collected from inspections in prior years would not suffice to allow the court to perform its function of determining the real market value. On July 31, 2018, the court dismissed taxpayer's complaint in TC-MD 180079R, and taxpayer did not appeal that decision.

2. *Case TC-MD 190056G*

Some months after the dismissal of TC-MD 180079R, in late 2018 and early 2019, taxpayer appealed to the BOPTA for the next tax year (tax year 2018-19), was denied relief, and appealed to the Magistrate Division in

---

[6] Taxpayer's response also asserted that the assessor had chosen not to follow the department's policies to ensure honest, accurate and fair assessment, stating: "'If the [assessor] has acquired enough information to generate a tax bill and take our money, there should be no need to reassess to defend their actions.'" In addition, taxpayer characterized the inspection as an unreasonable search that would violate his right to privacy and the Fourth Amendment.

TC-MD 190056G, where he included claims for relief for tax years 2014-15 through 2017-18. During the initial case management conference in TC-MD 190056G, the assessor orally moved for an order compelling the inspection of the property, and taxpayer opposed that motion. On or about June 15, 2019, taxpayer filed a brief supporting his position; the assessor filed a brief on or about June 20, 2019; and taxpayer filed a reply brief on or about July 6, 2019. Taxpayer's briefs raised essentially the same points summarized above, adding concerns that assessor personnel had not telephoned before entering his property, in disregard of "NO TRESPASSING" signs, for some or all of the inspections.

The magistrate in TC-MD 190056G granted the assessor's motion in an Order Compelling Inspection of Subject Property. As the magistrate later recited:

> "The court ordered Plaintiff to arrange an inspection of the subject property no later than September 12, 2019. In an email dated September 14, 2019, Plaintiff informed Defendant's counsel that he would not allow Defendant to inspect his property, commenting 'Obviously, this case will be dismissed by Magistrate Lundgren and we will file an appeal with the Regular Division.'"[7]

After receiving taxpayer's September 14, 2019, email, the assessor moved to dismiss TC-MD 190056G. Taxpayer apparently did not respond to that motion. The magistrate granted the assessor's motion to dismiss, stating:

> "It appears that Plaintiff has refused to comply with the court's Order Compelling Inspection of Subject Property,

---

[7] Taxpayer's September 14, 2019, email stated in full:

"Mr. Doyle,

"Our position regarding this matter has not changed. Due to the previous actions of your clients, we will not allow them [to] come onto our property. We feel that your clients should be able to defend and explain a tax value/bill they have created, and we have been paying, on the information they have. If a tax bill can be generated and we are expected to pay it, it should be able to be defended without further action.

"Obviously, the case will be dismissed by Magistrate Lundgren and we will file an appeal with the Regular Division.

"Respectfully,

"Scott Salisbury"

and Defendant's Motion to Dismiss is unopposed. Under such circumstances, dismissal is appropriate. *See* TCR-MD 21."

The citation in the dismissal order is to Tax Court Rule-Magistrate Division (TCR-MD) 21 of the Magistrate Division's rules of procedure. As in effect at the time, Rule 21 provided:

"The court may enforce any decision, order, judgment, or other statement directing a party to perform a specific act by imposing sanctions on the party refusing or neglecting to comply. Sanctions may include, but are not limited to, dismissal of the case, placing the noncompliant party in default, and sanctions for contempt as authorized by statute."

TCR-MD 21 (2019).

Taxpayer timely appealed to this division from the magistrate's dismissal of TC-MD 190056G, seeking the opportunity to present his case on the merits, *i.e.,* to prove a lower value or values for the property than the assessor determined. After a period of abeyance due to taxpayer's work assignment involving efforts to combat the pandemic, the court received the department's Motion for Summary Judgment. The department asks the court to dismiss taxpayer's appeal to this division by determining that the magistrate did not abuse his discretion when dismissing TC-MD 190056G based on the facts before the magistrate at the time of dismissal.[8] In response to questions from the court, the department briefed and orally argued its position that an abuse-of-discretion standard applies and that this division may consider only facts presented to the magistrate. Taxpayer resists the department's motion and filed a written Response and participated in oral argument.[9]

---

[8] Alternatively, if the court does not grant dismissal, the department asks the court to dismiss the appeal as to tax years 2014-15 and 2015-16 because the court's jurisdiction to change residential assessment values is beyond the court's reach. The court's conclusion below renders it unnecessary to address this argument.

[9] Taxpayer, who was not represented by counsel, did not respond to the portion of the department's argument addressing the standard of review and the scope of the evidence.

The department's counsel, who had represented the department before the magistrate, submitted a declaration attaching the following documents that had been filed with or generated by the court in TC-MD 190056G: the magistrate's Order Compelling Inspection of Subject Property and the parties' briefings on the assessor's motion leading to that order, including declarations of assessor personnel and an "Improvement Summary" that taxpayer had provided for tax year 2017; and the assessor's Motion to Dismiss, accompanied by a copy of taxpayer's September 14, 2019, email to the assessor's counsel referred to above. Taxpayer submitted the magistrate's Order Dismissing Complaint in TC-MD 190056G as an attachment to his complaint in this division. Taxpayer also submitted his own declaration containing a factual narrative and a declaration of his spouse. Finally, the department submitted the magistrate's Final Decision of Dismissal in TC-MD 180079R.

B.   *Standard of Review on Summary Judgment*

The court grants a motion for summary judgment if "the pleadings * * * declarations, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law." Tax Court Rule (TCR) 47 C. *See Christensen v. Dept. of Rev.*, 23 OTR 155, 162 (2018). "No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable [factfinder] could [find] for the adverse party on the matter that is the subject of the motion for summary judgment." TCR 47 C. "A material fact is 'one that, under applicable law, might affect the outcome of a case.'" *Ghiglieri v. Tomalak*, 304 Or App 717, 718, 469 P3d 262 (2020). The party seeking affirmative relief—in this case, taxpayer in seeking to challenge the magistrate's dismissal and ultimately to challenge the value or values assigned to the property—bears the burden of proof at trial. ORS 305.427.

## II.   ISSUES

(1)   In an appeal from a magistrate's decision of dismissal, does the Regular Division limit the facts considered to those before the magistrate, and does the Regular

Division review the magistrate's decision to dismiss for abuse of the magistrate's discretion?

(2)   Should the court dismiss taxpayer's appeal?

## III.   ANALYSIS

### A.   *Standard and Scope of Review of Magistrate's Dismissal*

The department asserts that the standard and scope of review that this division should apply to the magistrate's dismissal of TC-MD 190056G are limited, urging (1) that the court limit its review of the facts underlying the magistrate's decision to the facts that were before the magistrate; and (2) that the court apply an abuse-of-discretion standard to the magistrate's action. The court analyzes the department's position in light of the relevant statutes and the decided cases.

#### 1.   *Regular Division initially confines its review to magistrate's procedural decision*

The court considers it well settled that the Regular Division's initial task in reviewing a magistrate's decision of dismissal is to determine whether that dismissal was proper. The department does not argue otherwise in this case. The court restates the reasons briefly. The Regular Division is required to conduct a *de novo* review of each case, including appeals from the Magistrate Division. *See* ORS 305.425(1) ("All proceedings before the judge of the tax court shall be original, independent proceedings and shall be tried without a jury and de novo.");[10] *Village at Main Street Phase II, LLC v. Dept. of Rev.*, 356 Or 164, 168, 339 P3d 428 (2014) (Regular Division reviews magistrate decisions "*de novo*").

*De novo* review in the Regular Division does not mean that a party can necessarily expect the Regular Division to hear the merits of an appeal if the magistrate has dismissed that party's appeal on procedural grounds. For example, if a party fails to appear at a hearing when directed to do so, fails to file motions or briefs at the time the magistrate prescribes, or refuses to provide information to another party in discovery despite a magistrate's order, the

---

[10] Unless otherwise noted, the court's references to the Oregon Revised Statutes (ORS) are to the 2019 edition.

magistrate may dismiss the appeal as a way to enforce the magistrate's directives or orders. *See* TCR-MD 21 (quoted above). When the magistrate issues a decision of dismissal, the dismissed party may appeal to the Regular Division, but,

> "the Regular Division must initially restrict its *de novo* review to the issue of dismissal in the Magistrate Division. \*\*\* If the Regular Division failed to take a dismissal in the Magistrate Division into account, it 'would, in essence, render meaningless the requirement that \*\*\* matters first be heard in the Magistrate Division.'"

*Bleoaja v. Dept. of Rev.*, 20 OTR 102, 106 (2010) (citing *Spears v. Dept. of Rev.*, 20 OTR 88, 89 (2010) (*Spears I*) (quoting *Freitag v. Dept. of Rev.*, 19 OTR 144, 148 (2006)); *see also Wynne v. Dept. of Rev.*, 342 Or 515, 520, 156 P3d 64 (2007) (a plaintiff may not "bypass" the Magistrate Division).

Prior decisions make it clear that the first step the Regular Division will take is to decide whether dismissal was proper. If so, this division will likewise dismiss the appeal and issue a judgment against the party dismissed. If this division decides that dismissal was not appropriate, then this division will proceed to hear any procedural issues and the merits of the case. *See Spears I*, 20 OTR at 89 & n 1; *Spears v. Dept. of Rev.*, 20 OTR 229, 235-36 (2010) (*Spears II*) (finding good cause for taxpayer's failure to timely file documents in Magistrate Division; setting case for hearing on the merits in Regular Division).

2. *The department's positions*

The court now considers the department's two positions regarding the Regular Division's review of the magistrate's dismissal. First, the department asserts that the Regular Division may consider only those facts that were presented to the magistrate. The court disagrees. The Magistrate Division is not a court of record. *See Village at Main Street Phase II, LLC*, 356 Or at 167 (citing ORS 305.430(1) (Magistrate Division proceedings "shall not be reported")). Therefore, in contrast to procedures before the Supreme Court or the Court of Appeals, there is no "trial court record" that is required to be maintained at the Magistrate Division and transmitted to the Regular

Division and that can be expected to encompass what was known to the magistrate at the time of dismissal. *Cf.* Oregon Rules of Appellate Procedure (ORAP) 3.05. For this reason, the Regular Division will accept submissions from the parties as to facts that are both (1) relevant to dismissal; and (2) extant at the time the magistrate decided to dismiss the appeal. The court anticipates that the submissions often will simply consist of the magistrate's order or decision of dismissal, as well as any relevant briefs or other submissions that the parties provided to the magistrate. However, nothing prevents a party from supplementing that material with other evidence of facts relevant to dismissal that existed at the time of the magistrate's decision, regardless of whether those facts were known to the magistrate at the time.[11]

It follows that the court also must reject the department's second assertion, that the Regular Division must dismiss the appeal unless the magistrate abused his or her discretion in dismissing it. An abuse-of-discretion standard would imply that the Regular Division would afford a level of deference to the magistrate as initial decision-maker in taking a discretionary action. There is no doubt that magistrates have discretion, and are expected to use it, in many circumstances. ORS 305.501(4)(a) authorizes them to conduct hearings "in any manner that will achieve substantial justice," provided that they act "[s]ubject to the rules of practice and procedure established by the tax court."[12] However, because the Regular Division may have before it a set of facts that differ from the facts before the magistrate, the Regular Division must decide anew (*de novo*) whether

---

[11] The court emphasizes that facts presented to the Regular Division must have existed at the time the magistrate ordered the dismissal. The object of the first step of the Regular Division's review is to determine whether dismissal was proper in the Magistrate Division, not whether facts arising after that dismissal would justify allowing the case to proceed. For example, the party appealing a dismissal may present declarations or other testimony taken after the dismissal that describe facts that existed at the time of the dismissal. *See Spears II*, 20 OTR at 233 (affidavit of taxpayer's counsel made factual representations as to time of dismissal).

[12] Of course, magistrates, like all judicial officers, have "discretion" only "'within a permissible range of legally correct outcomes.'" *See Espinoza v. Evergreen Helicopters, Inc.*, 359 Or 63, 116-18, 376 P3d 960 (2016) (analyzing abuse-of-discretion standard) (citing *State v. Harrell/Wilson*, 353 Or 247, 254, 297 P3d 461 (2013)).

dismissal was proper, without deferring to the magistrate's decision.

The department, citing, among others, *ADC Kentrox v. Dept. of Rev.*, 19 OTR 91 (2006), and *Resolution Trust Corp. v. Dept. of Rev.*, 13 OTR 276 (1995), bases its argument in part on cases involving the standard of review that applies to the department's own actions pursuant to its supervisory authority in ORS 306.115(3) and other statutory grants of discretionary authority to the department.[13] The court distinguishes those cases as involving a legislative grant of discretion to an agency in the executive branch of government. *See* ORS 306.115(3) (authorizing department to change roll if it discovers reason for correction that, "in its discretion," it "deems" necessary to conform roll to applicable law); *see Martin Bros. Container v. Comm'n*, 252 Or 331, 338, 449 P2d 430 (1969) ("Even though the proceeding before the tax court is *de novo*, where the legislature has given the tax commission discretion to decide whether something is reasonable, we believe the function of the court is to decide whether there has been any abuse of discretion and not to retry the original determination of the commission."). By contrast, the Oregon Tax Court is one court with two divisions. *See Dept. of Rev. v. Ritchie Chevron, Inc.*, 14 OTR 406, 409 (1998) (so stating); *Norpac Foods, Inc. v. Dept. of Rev.*, 15 OTR 331, 333 (2001) (citing ORS 305.425(1) ("procedural issues presented to the judge in the Regular Division will be considered as 'original, independent' proceedings and tried *de novo*"). This order should not be read as disturbing any

---

[13] The department also cites *Freitag* for its positions that the Regular Division should apply an abuse-of-discretion standard and limit its review of facts to those that were before the magistrate. *See also Newton v. Clackamas County Assessor*, 17 OTR 348 (2004) (applying abuse-of-discretion standard to magistrate's decision to dismiss complaint for lack of prosecution). However, in *Spears I*, decided four years after *Freitag*, the court in reviewing its earlier decisions, including *Freitag*, acknowledged "some confusion in the decisions of the court," and proceeded, as the court does today, to review the magistrate's procedural decision *de novo* and to allow additional evidence existing at the time of the magistrate's decision. *See* 88 OTR at 89-90. In *Bleoaja*, also decided in 2010, the court likewise declared that a *de novo* standard applied to the magistrate's decision of dismissal. *See* 20 OTR at 106 ("Regular Division must initially restrict its *de novo* review to the issue of dismissal in the Magistrate Division."). The court now adopts the standards applied in *Spears I* and *II* and *Bleoaja*, and declines to follow *Freitag* or *Newton* to the extent inconsistent with the reasoning of this order.

prior holding of this court involving review of an executive agency action.

B.   *Should the court dismiss taxpayer's appeal?*

Applying the foregoing standard, the court turns to the magistrate's dismissal of TC-MD 190056G. The magistrate dismissed taxpayer's appeal because taxpayer refused to comply with the magistrate's order to allow the assessor's personnel to inspect the property. The magistrate issued that order in response to the assessor's assertion that an inspection was necessary to allow the assessor to prepare for trial and was reasonably calculated to lead to the discovery of evidence admissible at trial.

The court first considers the propriety of the magistrate's Order Compelling Inspection of Subject Property. Each assessor has a statutory duty to determine the real market value of each parcel of real property every year as of January 1 at 1:00 a.m. *See* ORS 308.210(1). The law thus assumes that property values may change from one year to the next even if no changes are made to the property itself. If physical aspects of the property change, various laws require the assessor to take specific actions related to value, including determining the real market value and maximum assessed value of "new improvements" (*see* ORS 308.153) and reducing values for destroyed or damaged property (*see* ORS 308.146(5)). The statutes give the assessor limited time, starting with the January 1 assessment date, to determine property values, apply the local rates, record all data on the public rolls, and generate bills by the deadline of October 25. *See* ORS 311.115.

Taxpayer feedback and taxpayer appeals serve as important checks on the assessor's work, but the legislature has tied the appeals process to the annual valuation and billing cycle, with an emphasis on determining an accurate value for the particular tax year. Each taxpayer has the opportunity to seek a reduction in the value the assessor determines for a tax year by filing a petition with the local BOPTA on or before the following December 31, which is approximately 10 weeks after the assessor sends the annual tax bill and six weeks after the November 15

deadline to pay the tax.[14] *See* ORS 309.100(2); ORS 311.250. If the BOPTA does not reduce the value, or if the taxpayer is dissatisfied with the amount of the reduction, the taxpayer may appeal to the Magistrate Division within 30 days. *See* ORS 305.280(4). In limited circumstances, a taxpayer may be entitled to claim relief for one or two prior tax years notwithstanding the annual deadline. *See* ORS 305.288 (Tax Court may change value of certain dwellings or for good and sufficient cause); *see also* ORS 306.115 (discretionary review by department). In general, however, the statutes require the taxpayer to act quickly to exercise the taxpayer's appeal rights, and to challenge one year's value at a time.

In the Tax Court, neither the assessor nor the court is bound by the value the assessor recorded on the roll. Rather, the assessor is free to assert that the value is higher (or lower) than initially recorded. *See Mid Oil Co. v. Dept. of Rev.*, 297 Or 583, 686 P2d 1020 (1984). In its *de novo* review, the court has jurisdiction to determine the "correct" value of the property, based on the evidence, without regard to the values on the roll, the values found by the BOPTA, or even the values that the parties assert at trial. *See* ORS 305.412. Accordingly, when a valuation dispute goes to trial, the statutes give each party an incentive to gather a complete set of facts to present to the court, a process that may include a formal appraisal.

Because the statutes require and allow the court to determine the property's value anew, an assessor's request to inspect the property in order to gather data for trial is likely to be reasonable in many circumstances. Moreover, in this case the facts show that, as of the assessor's most recent inspection, in April 2017, construction of the single-family residence was at least not totally complete,[15] and the permit to construct the riding arena was outstanding, with

---

[14] As exceptions, appeals for industrial property and utility and other centrally assessed property follow different processes that do not involve a BOPTA. *See* ORS 305.403; ORS 308.584.

[15] The parties disagree about the extent to which construction of the residence was complete in April 2017 (61 percent complete vs. entirely complete except for certain flooring and tile work). The court does not consider that factual difference material because, under Oregon's constitutional limitations known as Measure 50, the determination of the real market value of any addition of "new improvements" is crucial to the property's maximum assessed value for future

trusses and other materials being stored at the site and awaiting construction. These facts overwhelmingly support the assessor's request to reinspect the property to determine the value as of January 1, 2018. Regardless of how thorough the inspections in 2015, 2016, and 2017 may or may not have been, those inspections simply could not have fully informed the assessor as to how construction of the arena and finishing of the residence proceeded in the months leading up to the January 1, 2018, assessment date. Nor would they suffice to allow the assessor to make the best presentation to this court as to the value of the property as of January 1, 2018.

Taxpayer's response in this appeal, submitted November 12, 2020, asserts that the magistrate erred by failing to "first consider[] allowing the case to proceed with limited scope." At oral argument, taxpayer elaborated, asserting that the magistrate's decision to allow a full inspection, including all elements of the property and the ability to take photographs, was unreasonable given the number of prior inspections. Taxpayer acknowledged at oral argument that an assessor's request to inspect property is not necessarily always unreasonable, and indeed taxpayer allowed inspections several times before filing any appeal. The court understands taxpayer's concerns in this case seem to be (1) a lack of confidence, based on his discovery of past discrepancies, in the assessor's motivation or ability to inspect the property for purposes of valuing it accurately; and (2) concern about safety and privacy rights, particularly that any photographs would be made public or become public inadvertently, putting taxpayer's family at risk.

The court concludes that denying the assessor the ability to inspect the property would not address taxpayer's concerns about the assessor's intent or competence. The court relies on an adversarial process, in which each party gathers its facts about the value of the property and presents them to the court in the manner the party considers most persuasive. Preemptively excluding potential evidence by denying an assessor the ability to inspect the property

---

years. *See* ORS 308.153; ORS 308.146(1) (growth in maximum assessed value capped at three percent annually unless an exception applies).

would deprive the court of that evidence as well, impeding the court's ability to determine the "correct" value pursuant to statute. The court's task includes weighing the evidence and deciding questions of credibility. Taxpayer's remedy is not to prevent the assessor from gathering the evidence and making the assessor's best case, but rather to point out any flaws, attempted overreach, or overlooked facts in the assessor's appraisal, and to present and substantiate his own set of facts and conclusions.

Regarding taxpayer's concerns about safety, the court first acknowledges and respects that these concerns can be very real. However, the court must balance taxpayer's concerns against the probative value that a photograph may have in a dispute about the value of property. Courts have broad authority to seek to reconcile the needs of both parties through a protective order. The Magistrate Division can, for example, apply the discovery rules of the Regular Division in order to accept documents under seal and impose conditions on the taking of photographs and the use and storage of photographic data. *See* TCR 36 C (allowing court, upon showing of "good cause," to "make any order which justice requires," including specifying terms and conditions); TCR-MD (preface; authorizing magistrates to use Regular Division rules as a guide to extent relevant). Taxpayer was aware that a protective order was a possibility,[16] but he did not seek any such protection in TC-MD 190056G. At oral argument in this appeal, taxpayer explained that he lacks faith in the process of a protective order. By drawing that line, taxpayer left the court little to work with.

Regarding taxpayer's non-security-related privacy concerns, case law now establishes clearly that an order allowing an assessor to fully inspect taxpayer residential property as part of discovery in a valuation case generally does not violate either state or federal constitutional bars against unreasonable searches or otherwise impair protected privacy rights. *Poddar v. Dept. of Rev.*, 328 Or 552, 562-63, 983 P2d 527 (1999) (analyzing taxpayer claim under

---

[16] In the assessor's Motion to Compel Inspection in TC-MD 190056G, the assessor attached the Final Decision of Dismissal in TC-MD 180079R discussing the possibility of a protective order.

Or Const, Art I, § 9, and US Const, Amend IV); *Bleoaja*, 20 OTR at 109-10 (analyzing under US Const, Amend IV). Taxpayer points to no facts that distinguish these cases as a matter of law.

Taxpayer made clear at many points in this appeal that he feels aggrieved by acts of the assessor that indicate a lack of diligence or a desire to skew recorded values in favor of the assessor. Some of these alleged acts took place in prior tax years; others in the tax years under appeal in TC-MD 180079R or TC-MD 190056G. The court notes that, if this appeal or any future case were to proceed, the court's task would be to determine which acts, if any, made a difference in the assessed value of the property. The Tax Court has jurisdiction to address property tax disputes. Tort claims against assessors, however, generally are outside the Tax Court's jurisdiction. *See Sanok v. Grimes*, 294 Or 684, 698, 662 P2d 693 (1983).

The court must conclude that taxpayer's refusal to work with the assessor and the magistrate to seek a resolution to his concerns about security, and to comply with the magistrate's Order Compelling Inspection of Property, justified the magistrate's dismissal of taxpayer's appeal in TC-MD 190056G.[17] Now, therefore,

IT IS ORDERED that Defendant's Motion for Summary Judgment is granted.

---

[17] At oral argument, taxpayer appeared to ask this division to specially designate his appeal in TC-MD 190056G for hearing in this division, pursuant to ORS 305.501(1). Aside from numerous procedural issues under TCR 1 C, the court denies taxpayer's request as too late because the case was no longer pending in the Magistrate Division.