210          February 13, 2023          No. 16

IN THE OREGON TAX COURT
REGULAR DIVISION

HELMS DEEP, LLC,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Defendant.*

*and*

MULTNOMAH COUNTY ASSESSOR,
*Defendant-Intervenor*

(TC 5449)

Defendant-Intervenor Multnomah County (the county) sought dismissal of Plaintiff's property tax appeal for tax year 2017-18 as untimely under the extended deadline in ORS 305.288(1). The county asserted that it was entitled to summary judgment because Plaintiff's property was not a "dwelling." The court denied summary judgment without reaching the merits of the issue because the county relied primarily on facts determined in the prior Magistrate Division proceeding, and the county's only admissible evidence (a declaration of a county appraisal employee) was unspecific as to the time of the employee's observations of the property and otherwise was conclusory. The county's evidence, considered independently, did not suffice to enable the court to conclude that no objectively reasonable factfinder could determine that the property was not a dwelling. In addition, Plaintiff presented an appraisal card that created a genuine issue of material fact.

Oral argument on Defendant-Intervenor's motion for summary judgment was held December 12, 2022, in the courtroom of the Oregon Tax Court, Salem.

Alex C. Robinson, CKR Law Group, Lake Oswego, filed a response and argued the cause for Plaintiff.

Carlos A. Rasch, Assistant Multnomah County Counsel, Portland, filed the motion and argued the cause for Defendant-Intervenor.

Decision rendered February 13, 2023.

**ROBERT T. MANICKE, Judge.**

This property tax case comes before the court on a motion for summary judgment filed by Defendant-Intervenor

Multnomah County (the county[1]) asking the court to dismiss Plaintiff's appeal as untimely under any basis for relief, including ORS 305.288(1).[2] Plaintiff opposes the motion; Plaintiff has not cross-moved.

## I.   PROCEDURAL FACTS

Plaintiff filed two appeals in the Magistrate Division related to the subject property. Plaintiff first appealed the value of the property for tax year 2018-19, in Magistrate Division case TC-MD 190153N. In that case, the magistrate held a trial at which each party presented valuation experts, and the magistrate issued an unappealed decision determining the subject property's real market value for tax year 2018-19.

While the case involving tax year 2018-19 was pending before the magistrate, Plaintiff filed a separate complaint in the Magistrate Division, appealing the value of the property for tax year 2017-18, in case TC-MD 200292N. The magistrate there granted summary judgment for the county on the grounds that the property was ineligible for correction under ORS 305.288(1). The magistrate then entered a decision denying Plaintiff's appeal.

Plaintiff has appealed to this division of the court from the magistrate's decision in case TC-MD 200292N, involving tax year 2017-18. At oral argument before this division, it was undisputed that Plaintiff had not petitioned the county board of property tax appeals to reduce the property's values for tax year 2017-18 as permitted by ORS 309.026. That fact precluded an appeal to the Magistrate Division for tax year 2017-18 under the "usual" route pursuant to ORS 305.275(1)(a)(B). *See* ORS 305.275(3). The parties also agree that ORS 305.288(1) provided the only possible route for an appeal directly to the Magistrate Division. *See generally Work v. Dept. of Rev.*, 22 OTR 396, 404-05 (2017)

---

[1] Defendant Department of Revenue, which is the named defendant under Oregon Revised Statutes (ORS) 305.501(1) (2021), "asked Multnomah County to defend" the case and did not participate in briefing or oral argument on the county's motion.

[2] Unless otherwise indicated, citations to the ORS are to the 2017 edition.

(describing four possible "routes to obtain relief" from value determinations), *aff'd*, 363 Or 745, 429 P3d 375 (2018).[3]

## II.   FACTS RELEVANT TO ORS 305.288(1)

The parties agree that the subject property consists of real property owned by Plaintiff and identified by the county as account number R171366.

An appraisal employee of the county, Scott Elliott, made a sworn declaration, which the county submitted in support of its motion, stating the following facts that Plaintiff did not contest in its response.

"In March 2016, the County received building permits for the subject property. Because the permits were residential in nature, the property was placed in the County's residential property portfolio. At this time, the County had no further information about the property or its intended use.

"On July 6, 2017, [Elliott] attempted to inspect the property while it was still under construction to get a better understanding of what was being built for valuation and taxation purposes. However, [Elliott] was denied an opportunity to conduct the inspection and further information by owner representatives onsite.

"Based on the limited information the County had in 2017 provided only by the building permit types, the County characterized the subject property as residential for purposes of valuation and taxation.

"Upon completion of construction in 2018, Plaintiff appealed the 2018 taxes and the County was able to inspect the subject property for the first time."

---

[3] A third "route" to relief lies under ORS 306.115(3), which allows the Department of Revenue to order a roll change in certain circumstances. This court may review the Department's decision under that provision under an abuse-of-discretion standard. *See ADC Kentrox I v. Dept. of Rev.*, 19 OTR 91, 93-98 (2006). Counsel for Plaintiff represented at oral argument that Plaintiff has petitioned the Department for relief under ORS 306.115(3), and that action on that petition is awaiting this court's decision under ORS 305.288(1). A fourth route lies under ORS 305.288(3), which allows this court to order a correction upon a determination that "good and sufficient cause" exists for the taxpayer's failure to pursue any statutory right of appeal. Plaintiff has not sought relief under this fourth route.

Elliott also testified as follows:

> "At this inspection, appraisers for the County were able to determine and conclude that the property was not residential, had not been primarily used as residential, and was not intended to be used as residential. This determination was based on the condition of the property, observations by County appraisers, discussions with onsite representatives, and amenities and build type, including a skate park, conference rooms, and event space[.] As a result, the County removed the property from the residential portfolio and placed it in the commercial property portfolio, where it remains as of this date."

As to this latter testimony, Plaintiff did not contest that an inspection occurred, that county appraisers concluded as stated above, or that the county placed the property into the commercial portfolio. Plaintiff did, however, express disagreement with the substance of two conclusions Elliott described: that the property was not residential and was not intended to be used as residential.

As an exhibit to its response to the county's motion, Plaintiff submitted a copy of a two-page document entitled "Property Appraisal Card 2017." The county did not contest the authenticity of the document. The Appraisal Card refers to property account number R171366 and contains, among other things, the following text:

- "Acct Details *** RESIDENTIAL IMPROVED *** Last Appraised: 07/06/17"

- "IMPROVEMENT INFORMATION *** I1 SFR Single Family Residential Class G *** Mkt Value: 8829610 *** 2015 – PURCHASED FOR CONVERSION TO PRIVATE RESIDENCE"

As part of its reply, the county attached a declaration of counsel authenticating two exhibits: (1) an excerpt from the County's appraisal in the 2018 appeal, depicting photographs of the subject property and (2) screenshots from the NM Bodecker Foundation's website, highlighting the foundations mission and use of the subject property. The screenshots bear the copyright date 2022.

At oral argument, the parties agreed that the property was under construction on January 1, 2017. Counsel for Plaintiff acknowledged that the property would not have satisfied all of the conditions of ORS 305.288(1) for tax years after tax year 2017-18.

Each party made numerous additional factual assertions in briefing which are not evidence, and which the court therefore cannot use. The county included a narrative description of the physical attributes of the improvements before and after work done by Plaintiff; described the "purpose" of the new improvements and the "mission" of a group purportedly involved with their construction; and described the "function" of the property. The county cited only the magistrate's decisions for these assertions, and the admissible evidence discussed above is silent with respect to those assertions. The court must disregard all of these assertions. *See* ORS 305.425(1) ("All proceedings before the judge of the tax court shall be original, independent proceedings and shall be tried without a jury and de novo."); *Village at Main Street Phase II v. Dept. of Rev.*, 356 Or 164, 167-68, 339 P3d 428 (2014); *Salisbury v. Dept. of Rev.*, 24 OTR 497, 505 (2021); *Shevtsov v. Dept. of Rev.*, 25 OTR 173, 174-75 (2022). Plaintiff made representations about matters such as which changed property ratio the county applied for tax year 2017, the intentions of the individual who arranged to have the improvements built, and the content of the certificate of occupancy. Plaintiff cited nothing and presented no exhibits in support of these assertions. The court must disregard all of these assertions as well.

## III.   ISSUE

Is the county entitled to summary judgment that Plaintiff's property failed to satisfy the conditions for appeal under ORS 305.288(1) for tax year 2017-18?

## IV.   ANALYSIS

The county seeks summary judgment under the following provision:

"(1)   The tax court shall order a change or correction applicable to a separate assessment of property to the assessment and tax roll for the current tax year or for

either of the two tax years immediately preceding the current tax year, or for any or all of those tax years, if all of the following conditions exist:

"(a)   For the tax year to which the change or correction is applicable, the property was or is used primarily as a dwelling (or is vacant) and was and is a single-family dwelling, a multifamily dwelling of not more than four units, a condominium unit, a manufactured structure or a floating home.

"(b)   The change or correction requested is a change in value for the property for the tax year and it is asserted in the request and determined by the tax court that the difference between the real market value of the property for the tax year and the real market value on the assessment and tax roll for the tax year is equal to or greater than 20 percent.

"(2)   If the tax court finds that the conditions needed to order a change or correction under subsection (1) of this section exist, the court may order a change or correction in the maximum assessed value of the property in addition to the change or correction in the real market value of the property."

ORS 305.288.

        The parties do not dispute that tax year 2017-18 is one of "the two tax years immediately preceding the current tax year" and thus is subject to correction under ORS 305.288(1) if all of the conditions in paragraphs (a) and (b) exist. The county raises no issue as to the conditions in paragraph (b). Therefore, the only issue is whether the two "dwelling" conditions in paragraph (a) were satisfied: that the property (1) "was or is used primarily as a dwelling (or is vacant)" and (2) "was and is a single-family dwelling [or] a multifamily dwelling of not more than four units ***."[4] The county contends that neither of the "dwelling" conditions was or is satisfied.

        Before discussing the parties' specific arguments, the court observes that neither party has offered definitions of the key terms "dwelling," "single-family dwelling,"

_____

[4] Neither party has contended that the property was or is "a condominium unit, a manufactured structure or a floating home."

"multifamily dwelling," "use," or "vacant." Without pinning down the meaning of these terms, it is difficult to know what facts cause a structure to be a dwelling or not, or what facts constitute "use" as a dwelling or "vacancy."[5] The parties also expressed disagreement at oral argument whether the relevant date to determine the property's eligibility under ORS 305.288(1)(a) is January 1, 2017, or July 1, 2017, or some other date. However, neither party briefed the issue. Nonetheless, even without definitions of key terms or resolution of the relevant date "[f]or" tax year 2017-18 under ORS 305.288(1)(a), deficiencies in the evidence require the court to deny the county's motion.

A.    *Whether the property was "used" "primarily" as a dwelling or was "vacant."*

The county first argues that, as to the first condition in ORS 305.288(1)(a), the property "was never primarily used as a *** dwelling ***, if ever used for that purpose at all." Instead, the county asserts, the property "was and continues to be used for its specific special use of artist meeting space, recording studio, skate park, and workshop." Ignoring, as it must, the conclusions of the magistrate now proffered by the county, the court finds that the evidence supporting this argument reduces to Elliott's statement that the property "had not been primarily used as residential ***." This statement is nothing more than a conclusion. It offers no observations or other specific facts as to whether anyone "live[d] in" or had lived in the property—ever—much less whether anyone did or had done so in a manner that

---

[5] In *Shevtsov v. Dept. of Rev.*, 24 OTR 83 (2020), the court determined the meaning of "dwelling," as of the date of enactment of what is now ORS 305.288(1), in deciding that property lacking any "building or structure" was ineligible for relief:

> "*Webster's* defines 'dwelling' as 'a building or construction used for residence.' *Webster's Third New Int'l Dictionary* 706 (unabridged ed 2002). The *American Heritage Dictionary* defines the term more broadly as '[a] place to live in; an abode.' *American Heritage Dictionary of the English Language* 558 (5th ed 2011)."

24 OTR at 86. The court had no occasion to decide whether a particular structure qualified as a dwelling. Likewise, the court observed that the term "vacant" may be ambiguous but saw no need to determine its meaning for purposes of that case, including whether property that is under construction can qualify as "vacant." *Id*. at 85.

might be considered less than the property's "primary" use. *See American Heritage Dictionary* at 558.[6]

B.    *Whether the property had the status of a "dwelling," including a "single-family dwelling" or a "multifamily dwelling."*

Turning from the use of the property to its character or status as a "dwelling," the court finds that the county's position again turns largely on Elliott's declaration:

> "At this inspection, appraisers for the County were able to determine and conclude that the property was not residential, had not been primarily used as residential, and was not intended to be used as residential. This determination was based on the condition of the property, observations by County appraisers, discussions with onsite representatives, and amenities and build type, including a skate park, conference rooms, and event space[.]"

This evidence in Elliott's declaration is inadequate for the following reasons:

- *Conclusory.* The bases Elliott cites for the county's determination consist of "the condition of the property" and "amenities and build type, including a skate park, conference rooms, and event space." The court considers these in sequence. The reference to the property's "condition" is vague because "condition" could refer to literally any unspecified attribute of the property. The listed "amenities" are features that are *included* in the property, but Elliott does not explain whether necessary attributes of a dwelling are *absent* from the property.

---

[6]  Plaintiff counters that the property was "vacant" both on January 1, 2017, and on July 1, 2017, and therefore need not have been "used primarily as a dwelling." In support of its argument, Plaintiff refers to the uncontested fact that the property was under construction on January 1, 2017, and until sometime after July 1, 2017. The county did not address this argument in briefing; at oral argument, the county argued that "vacant" does not include "under construction." The parties did not develop their arguments, leaving open both legal and factual questions about whether "vacant" and "under construction" are mutually exclusive. However, because the county has offered no useable evidence to support its conclusion that the property "had not been primarily used as residential," the court need not now address whether the property was "vacant."

The statement thus does not exclude the possibility that the property might be useable as a dwelling, or even primarily useable as a dwelling, despite additional features not typically found in a dwelling. The court also finds vague the references to "observations" by county appraisers (of what?), "discussions" (about what?) and "onsite representatives" (of whom?). Given that the latter references add no substantive content, the court finds it unnecessary to try to parse whether any or all of them constitute inadmissible hearsay.

- *Unspecific as to time.* Elliott does not testify on what date the county appraisers made their observations. Paragraph 6 of his testimony seems to imply that the county "was able to" inspect the property only because Plaintiff had "appealed the 2018 taxes." This suggests that Elliott made his observations within or after the statutory window for an appeal to the board of property tax appeals, which runs from the date the assessor mailed out the bills for the year (no later than October 25, 2018) through December 31, 2018. *See* ORS 311.250(1), 309.100(2). This would place the county's inspection at approximately 18 months after the July 1, 2017, start of tax year 2017-18, and approximately two years after the January 1, 2017, start of the corresponding assessment year. *See* ORS 308.007. Moreover, Elliott does not testify that the county's observations were "as of" any particular earlier date; his statement that the property "*had not* been primarily used" as residential could refer to any earlier time preceding the county's observations in late 2018 or in 2019. Construction concededly occurred during most or all of 2017, and possibly during 2018. Even if the property's physical features by the time of the inspection in late 2018 or in 2019 were such that it could not have been used primarily as a residence, there is simply no evidence that it could not have been used primarily as a residence at some relevant time during either the assessment year 2017 or the tax year 2017.

The other evidence as to the character or status of the property as any kind of "dwelling" consists of the photographs and screen shots attached to the county's declaration of counsel. These exhibits suffer from similar inadequacies. The photographs are an excerpt from the County's appraisal in the 2018 appeal. Presumably, that appraisal addressed the state of the property as of the assessment date for tax year 2018-19, which was January 1, 2018—six or 12 months after the date relevant for this appeal.

The photographs themselves include at least some scenes that seem to indicate a "place to live in": one shows a small sink, countertop and mirror as one might find in a bathroom; another, a room with an oven and stovetop, counters, cabinets and drawers, a table flanked by backed chairs, and a booth resembling an eating nook; a third appears to show a rooftop garden with a child coming down a slide. A number of photographs show exterior scenes that do not seem to obviously indicate one way or the other whether the use or character of the property is as a dwelling. The fact that other photographs appear to include a sound studio, a skate park, and perhaps an art or craft studio space does not logically preclude that the structure as a whole could have been primarily used as a dwelling.

The screen shots show a copyright date of 2022 and, to the extent otherwise dated, purport to show activities occurring in summer 2021. The only reference to an earlier date is a shot discussing the establishment of a foundation in 2017, the relevance of which is not apparent from the admissible evidence.

C.   *Application of Summary Judgment Standard*

The court's task is to determine whether there is "no genuine issue as to any material fact," and the county is "entitled to prevail as a matter of law." Tax Court Rule (TCR) 47 C. To do this, the court must test whether, viewing the record "in a manner most favorable to" Plaintiff as the nonmoving party, "no objectively reasonable juror could return a verdict for" Plaintiff. *Id.*

The court finds that the admissible evidence in the record either falls short of supporting a reasonable finding

of fact in support of the county's motion or, at most, shows a genuine issue of material fact that precludes summary judgment. Because the admissible evidence that the county introduces is conclusory and does not clearly relate to a date relevant to tax year 2017-18, as discussed above, it fails the "no reasonable juror" test. This is true even if the court ignores any evidence supplied by Plaintiff. *See Van Osdol v. Knappton Corporation*, 91 Or App 499, 502, 755 P2d 744 (1988) ("Even if facts are undisputed, if the inferences arising from them are susceptible to more than one reasonable conclusion, summary judgment should not be granted.").

The only evidence Plaintiff submitted in response to the county's motion is the 2017 appraisal card. However, this exhibit contains text from which a factfinder reasonably could infer that the county, after having "[a]ppraised" the property on "07/06/17," determined that it was "residential." Even if any reasonable factfinder could conclude from the county's evidence that the property was not a dwelling as of the relevant date in 2017, the court finds that the appraisal card suffices to create a genuine issue of material fact as to that point.[7] Thus, through this one exhibit, Plaintiff has satisfied the requirement in TCR 47 D to "set forth specific facts showing that there is a genuine issue as to any material fact for trial."

## V.   CONCLUSIONS

The court will deny the county's motion. Because the motion fails for lack of evidence, this order does not resolve any of the legal issues that the parties have raised in briefing, or to which the court has referred in this order, including:

(1)   The meaning the legislature intended for the terms "dwelling" (including any criteria for distinguishing a dwelling from other kinds of structures), "single-family dwelling," "multifamily dwelling," "use," "vacant" and "primarily"; and

---

[7] Although Plaintiff failed to include a declaration authenticating the copy of the appraisal card attached to its response, the county did not dispute that the exhibit is an accurate copy of the appraisal card it purports to be. As a public record, the court finds the exhibit admissible pursuant to OEC 803 even though it is hearsay and Plaintiff offered no witness testimony.

(2)   The date as of which the use of property is determined for purposes of ORS 305.288(1).

This court is required to decide the case with a written decision. *See* TCR 62. Any legal analysis in the decision will likely be published and serve as precedent for future cases. For those reasons, the court will require the parties to present their own analysis of the legal issues in future proceedings in this case, so that the court can benefit from the adversarial process. If the case proceeds directly to trial, the court will require pre- and post-trial briefing to set forth that analysis. Alternatively, the court may, in its discretion, hear new motions under the court's rules, should either or both parties choose to proceed by motion. *See Citizens Valley Bank v. Mueller*, 63 Or App 152, 156, 662 P2d 792 (1983).

The court directs the parties to confer regarding further proceedings and to attempt to present the court with an agreed plan for further proceedings. If the court has not received an agreed plan in writing on or before March 15, 2023, the court will convene a case management conference to set a trial date. Now, therefore,

IT IS ORDERED that Defendant-Intervenor's Motion for Summary Judgment is denied.