IN THE OREGON TAX COURT
REGULAR DIVISION
Property Tax

| | | |
|---|---|---|
| USMAN MUGHAL and ZAHRA BALOCH, | ) ) ) | |
| Plaintiffs, | ) | **TC 5458** |
| v. | ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) | |
| Defendant, | ) ) | |
| and | ) ) | **ORDER DENYING DEFENDANT-INTERVENOR'S MOTION TO STRIKE** |
| MULTNOMAH COUNTY ASSESSOR, | ) ) | **AND GRANTING DEFENDANT-INTERVENOR'S MOTION FOR** |
| Defendant-Intervenor. | ) | **SUMMARY JUDGMENT** |

This property tax valuation case is before the court on a motion for summary judgment filed by Defendant-Intervenor (the county). The county asks the court to conclude that the magistrate properly dismissed Plaintiffs' complaint in that division, and to likewise dismiss this appeal, applying *Salisbury v. Dept. of Rev.*, 24 OTR 497, 505-06 (2021).

The county also asks the court to strike Plaintiffs' response to the county's motion for summary judgment on the grounds of untimeliness. The court begins with this motion to strike.

## I. MOTION TO STRIKE

At an initial case management conference in this division held October 23, 2023, the county stated that it intended to file a motion for summary judgment. At the court's direction, the parties submitted an agreed proposed briefing schedule, which the court approved on October 27, 2023. The county's motion was due December 1, 2023; Plaintiffs' response was due January

5, 2024; and the county's reply was due January 17, 2024. The county filed its motion timely on December 1, 2023. Thereafter:

- On the due date for filing Plaintiffs' response, Friday, January 5, 2024, at 5:09 p.m., counsel for Plaintiffs sent an email to counsel for the county, stating: "I am having a technical issue filing the response. I am requesting an extension until Monday. I will submit the motion for extension and response Monday. I would appreciate if you would not object to the extension. This is an issue on my side, not this taxpayer." (Def-Inv's Decl of Rasch, Ex A at 1.) On Saturday, January 6, 2024, at 9:02 a.m., counsel for the county responded: "Can you email it to me?" (*Id.*) Counsel for Plaintiffs did not reply. (*Id*. at 2, ¶ 5.)

- Also on January 5, 2024, at 6:01 p.m., counsel for Plaintiffs sent an email to court staff, with a copy to county's counsel. The email states: "I'm having an issue submitting the response in this case. I notified Mr. Rasch and will submit a motion for an extension to file Monday." (Def-Inv's Decl of Rasch, Ex B at 2.)

- On January 10, 2024, Plaintiffs filed their response, five days late. Plaintiffs did not file a motion for an extension, or otherwise communicate with the court, before filing late.

- On January 17, 2024, the county timely filed its reply.

The county urges the court to disregard Plaintiffs' January 10, 2024, response to the county's motion for summary judgment because it is untimely. (*See* Def-Inv's Reply at 2.) Plaintiffs did not file any written response to the county's motion to strike Plaintiffs' response. At oral argument on February 27, 2024, Plaintiffs offered to brief the facts leading up to the filing of their response. (Statement of Michael Mangan, Oral Argument, Feb 27, 2024, 10:11.) The court noted that Plaintiffs' statements on this point would be treated as a response on the merits of the county's motion to strike and the court would return to this issue later in oral argument. (Statement of Robert Manicke, Oral Argument, Feb 27, 2024, 10:11.). Midway through oral argument, the court briefly returned to the motion to strike and asked county's counsel to address its motion. (Statement of Robert Manicke, Oral Argument, Feb 27, 2024, 10:20.) Shortly after, Plaintiffs' counsel experienced technical difficulties with his microphone

and left to call in to the hearing. When oral argument restarted, Plaintiffs' counsel did not address or respond to the motion to strike and neither party reraised the issue. (Oral Argument, Feb 27, 2024, 10:27.) Following oral argument, Plaintiffs did not submit any additional briefing to the court. To date, Plaintiffs have not explained the filing delay; their failure to move for an extension; their failure to provide the county with a courtesy copy of the reply while they sought to overcome their "technical issue in filing the response"; or their failure to communicate, or follow through, with the court or opposing counsel. On such a record, the court normally would grant the motion to strike. *See Nolan v. Jackson Nat. Life Ins. Co.*, 155 Or App 420, 428, 963 P2d 162 (1998) (holding that the court was not required to make specific findings regarding prejudice to the opposing party before refusing to consider an untimely filing); *Heller v. BNSF Ry. Co.*, 264 Or App 247, 253, 331 P3d 1079 (2014) (adhering to the court's decision in *Nolan*). However, solely to avoid any appearance that full development of the record could have been stymied by technical difficulties, the court will deny the county's motion to strike and will consider Plaintiffs' response, including the attached Declaration of Michael Mangan.[1]

## II. MOTION FOR SUMMARY JUDGMENT

The court next decides the county's motion for summary judgment, applying Tax Court Rule (TCR) 47 C.[2] The court will grant the county's motion because, based on the facts in this

---

[1] The court further concludes that consideration of Plaintiffs' Response to Motion for Summary Judgment does not prejudice the county, for two reasons. First, Plaintiffs' response does not include any legal arguments that were not repeated by Plaintiff at oral argument (without objection). Second, even after consideration of Plaintiffs' response, the court has decided to grant the county's motion for summary judgment.

[2] Because this division reviews dismissal *de novo*, as explained below, the court applies the edition of its rules as in effect when this order is filed. TCR 47 C provides, in relevant part:

"The court will grant the motion if the pleadings, depositions, affidavits, declarations, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law. No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment. The

record, dismissal adheres to the requirements in ORS 305.501(4)(a) to "achieve substantial justice" in accordance with the rules applicable to the Magistrate Division and without resort to technicalities. As explained in section II.C.3, this division derives those requirements from the statutory text, as well as from contemporaneous case law applying closely similar text found in the law governing workers' compensation appeals. While a magistrate has substantial discretion to consider evidence that has some probative value without adhering to the rules of evidence, a magistrate (1) must comply with any applicable court rules, (2) may not rely solely on "technical or formal" rules of evidence or procedure to exclude otherwise probative evidence, and (3) must "achieve substantial justice" by acting impartially and fairly as expected of a judicial-branch court.

Applying those standards in this case, the court concludes that Plaintiffs' own actions and inactions made dismissal appropriate.

First, Plaintiffs failed to comply with the magistrate's months-old order that trial would be held in person in the courtroom in Salem. Their representative, an attorney, appeared in person but without any witnesses. He informed the court that he wished to offer testimony of Plaintiffs, but that they were "out of town" and requested to testify by remote means. The county, whose representatives and witnesses all were present in person, objected. The magistrate denied the motion. The denial was a permissible choice under the Magistrate Division's rules governing remote proceedings. Although Plaintiffs' testimony as property owners presumably would have had some probative value, excluding it achieved substantial justice by avoiding any appearance of partiality in favor of a party that had simply chosen to ignore the court's order to provide testimony in person, and that had failed to ask for an exception from the order at a case

adverse party has the burden of producing evidence on any issue raised in the motions as to which the adverse party would have the burden of persuasion at trial."

management conference or in writing as prescribed by court rule. Nothing about the denial was technical or formal; it merely enforced a clear, written order.

Second, Plaintiffs proffered four documents as evidence but failed to make available any witnesses other than themselves. And because Plaintiffs' own testimony was properly barred, *no one* was available to testify or be cross-examined about the proffered exhibits. When considered as a group, and ignoring the absence of important factual content, the documents appear to have had some probative value: one was an appraisal report for an earlier year that valued the property at $1,906,000; another was Plaintiffs' circuit court complaint alleging that the contractors that built the house were liable for an estimated $900,000 in damages due to defects; and the remaining two were a consulting firm's assessments of construction defects at the property. Presumably, Plaintiffs had hoped to present a case-in-chief that would use these exhibits to support their claimed real market value of $1,000,000. The county objected, and the magistrate excluded the exhibits. That ruling does not violate any court rule because the rules do not address the admission or exclusion of evidence except as to the presentation and marking of exhibits. The ruling achieved substantial justice because each exhibit is essentially meaningless without testimony of a witness to fill in the substantial factual gaps and, as to the appraisal and forensic reports, to explain and defend the expert conclusions. On these facts, Plaintiffs' failure to present the authors of the documents for cross-examination eliminated one of the primary safeguards of truth available to the magistrate as factfinder. This fundamental principle of allowing cross-examination stands on its own, even if it also overlaps with policies underlying the formal hearsay and authentication rules. Therefore, the ruling that excluded the documents does not improperly rely on "technical" rules.

Accordingly, dismissal is appropriate; the court will grant the county's motion for summary judgment.

A. *Facts*

The court finds the following facts to be undisputed:

(1) The property at issue is Plaintiffs' personal residence, located in the West Hills of Portland. (*See* Def-Inv's Decl of Elliott at 2, ¶ 4.) As of January 1, 2017, the county recorded its real market value on the tax roll as $3,312,260. (*See id.*, Ex B at 18.) As of January 1, 2021, the county recorded its real market value on the tax roll as $2,639,440. (*See id.*, Ex A at 4.)

(2) On or about May 18, 2022, Plaintiffs appealed to the Magistrate Division (TC-MD 220305G). (Ptfs' Compl at 1-2, ¶ 2; Def-Inv's Ans at 1, ¶ 1; Def-Inv's Ans at 1, ¶ 2.) Plaintiffs sought a reduction in the real market value to $1,000,000 for tax years 2017-18, 2018-19, 2019-20, 2020-21, and 2021-22. (Def-Inv's Decl of Elliott at 2; *id.* Ex A at 3.)

(3) On July 18, 2022, on motion by the county as defendant, the magistrate issued an "Order Dismissing 2017-18 and 2018-19 Claims." The order states in relevant part:

"Under certain conditions, ORS 305.288(1) and (3) allow this court to correct tax rolls for the current tax year and the two immediately preceding tax years. Plaintiffs' Complaint was filed May 18, 2022, which was during the 2021-22 tax year. *See* ORS 308.007[(1)](c). Thus, ORS 305.288 does not allow Plaintiffs relief before the 2019-20 tax year."

*Mughal v. Multnomah County Assessor*, TC-MD 220305G at 1 (Jul 18, 2022).[3]

(4) The magistrate held a case management conference on September 28, 2022, at which the court set trial for May 9, 2023. (Def-Inv's Decl of Elliott, Ex D at 1; Second Journal Entry.) The trial was to be "[a]n in-person trial * * * for one and a half days." (*Id.*; *see also* Notice of Scheduled Court Proceeding ("Location: Courtroom").).

(5) More than a week before the date set for trial, the parties exchanged exhibits as required by the magistrate.

"Plaintiffs' exhibits where [*sic*] all the same exhibits previously exchanged in [an earlier Magistrate Division appeal for the same property for tax years 2016-17 and 2017-18 (TC-MD 180118R). They included] the appraisal report from 2017 that

---

[3] The court takes judicial notice of cited documents that were filed in the Magistrate Division proceedings and that are publicly available at the time of the Regular Division proceeding, for the limited purpose of establishing filing dates, establishing statements made on the face of those documents, or establishing other facts "not subject to reasonable dispute." *See* OEC 201(b). By doing so, the court does not adopt facts found by the magistrate as factual findings in the Regular Division, nor does the Regular Division adopt legal conclusions reached by a magistrate. The filings and what they say, residing as they do in the public domain, are facts "[c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." OEC 201(b)(2).

was previously not allowed by the court in [TC-MD 180118R], in addition to a complaint filed by Plaintiffs' [*sic*] in the Multnomah County Circuit Court alleging construction defects on the subject property, case number 22CV12971. The County exchanged an appraisal report prepared by County staff for the subject property covering the years at issue."

(Def-Inv's Decl of Elliott at 3, ¶ 11; *see* Ptfs' Decl of Mangan at 1 ("The exhibits were timely exchanged in the Magistrate Division appeal * * *.").)

The court takes judicial notice of four exhibits filed by Plaintiffs in TC-MD 220305G on or about the date of the exchange:

Exhibit 1 is a "Visual Building Enclosure Condition Assessment" prepared for Plaintiffs by Forensic Building Consultants (Forensic Report 1). The report is dated September 15, 2021, and summarizes observations reportedly made on September 1, 2021. It does not assign any dollar amount to any of the issues it identifies.

Exhibit 2 is an appraisal report by Bernhardt Appraisal dated January 19, 2019, and purporting to determine a value "as of" January 1, 2017, in the amount of $1,906,000 (Appraisal Report).

Exhibit 3 is entitled "Mughal Residence Preliminary Repair Assessment" by Forensic Building Consultants (Forensic Report 2). It is dated March 25, 2023, and purports to "to provide initial repair recommendations of the known deficiencies at the Mughal Residence as noted in the BECA dated 02.23.2023." It does not assign any dollar amount to any of the repair items it identifies.

Exhibit 4 is a complaint that Plaintiffs filed in Multnomah County Circuit Court on or about April 19, 2022, against three defendants alleged to have built the residence on the subject property (Multnomah Complaint). It lists 21 specific tasks alleged to have been performed defectively, such as: "Improperly installed tiles and missing flashing at main roof assembly." No details or itemized amounts are stated; the only reference to a dollar amount in the complaint is: "As a result of such defective Work and resultant property damage, and loss of use due to delays, Plaintiffs have suffered damages in an amount to be determined by a jury but currently estimated to be $900,000." (*Id.* at 4; *see also id.* at 5, 8.) The

Multnomah complaint alleges that Plaintiffs had notified the defendants of the defects on October 4, 2021; no other dates are given. (*See id.* at 4, 8.)

(6) On May 9, 2023, the date set for trial:

    a. "All County representatives and witnesses were present in-person. However, only Plaintiffs' counsel was present for Plaintiffs. Plaintiffs' counsel informed [Elliott] that Plaintiffs' [*sic*] would not be attending in person because they were out of town and he was going to request that they be allowed to appear remotely. Upon Plaintiffs' request to appear

remotely, the County objected reasoning that the proceeding was ordered to be in-person, the County's witnesses and representation were present, and such a request could have been made prior to trial. The court agreed and sustained the County's objection." (*Id.* at 3, ¶ 12; *see* Ptfs' Decl of Mangan at 1 ("I was present on the date of hearing in Salem, Oregon * * * .").)

b.  "Plaintiffs' counsel then moved to enter the exhibits Plaintiffs' [*sic*] had exchanged prior to trial. However, because Plaintiffs' [*sic*] had no witnesses, no one to be available to cross-examine or authenticate, and due to the untimeliness of the exhibits relative to the years on appeal, and the hearsay nature of the exhibits, the county objected and moved that they be excluded from the record. The court, after consideration, agreed and granted the County's motion to exclude the exhibits." (*Id.* at 3, ¶ 13; *see* Ptfs' Decl of Mangan at 1 "I offered to argue how much weight the court should give to the evidence plaintiffs' [*sic]* produced.").)

c.  "In the end, Plaintiffs' [*sic*] rested their case having offered no witnesses to testify and no exhibits entered as evidence before the court. As a result, at the conclusion of Plaintiffs' case, the County moved for dismissal. Plaintiffs' counsel did not object to dismissal or otherwise contest the dismissal in any way, despite the court giving opportunity to. The court granted the County's motion to dismiss and this appeal before the Regular Division followed." (*Id.* at 4, ¶14.)

(7) On May 31, 2023, the magistrate issued a Decision of Dismissal in TC-MD 220305G. The decision states, in relevant part:

"This matter came before the court on Defendant's motion to dismiss, made at trial on May 9, 2023. Plaintiffs were represented by Michael Mangan, attorney-at-law. Defendant was primarily represented by Scott Elliott, Appraiser Supervisor, with Carlos Rasch, Assistant County Counsel, appearing partway through the trial. Although the trial had been scheduled as an in-person proceeding at Plaintiffs' request, Plaintiffs moved to offer remote testimony at the

outset of trial because they were traveling out of town. The court sustained Defendant's objection to that motion.

"Defendant then moved to exclude Plaintiffs' proffered exhibits, which consisted of a Multnomah County Circuit Court complaint alleging construction defects, an appraisal dated two years before the assessment date of the earliest tax year at issue, and two forensic reports describing alleged construction defects without quantifying the cost to cure them. The court excluded the proffered exhibits because they were hearsay and did not appear likely to aid in achieving substantial justice. *Cf.* ORS 305.501(4)(a).

"Defendant then made a motion to dismiss, which Plaintiffs did not contest. Now, therefore,

"IT IS THE DECISION OF THIS COURT that Plaintiffs' Complaint be dismissed."

(Ptfs' Compl Ex 1 at 1-2.)

(8) On appeal to this division, Plaintiffs challenge the magistrate's dismissal. (Ptfs' Compl at 2, ¶ 3.) For relief, Plaintiffs ask this division for a "judgment" declaring that "the magistrate [*sic*] should be vacated and that a hearing should be conducted to weigh the plaintiffs' testimony and the earsay [*sic*] evidence provided." (*Id*. at 2, ¶ 4.)

(9) Although the tax years at issue in the appeal to this division are not stated in the complaint, at oral argument counsel informed the court that the only tax years on appeal are 2019-20, 2020-21, and 2021-22. (Statement of Michael Mangan, Oral Argument, Feb 27, 2024, 11:14.) Without objection, under Tax Court Rule (TCR) 23 A, the court deemed the complaint amended to reflect this change.

The county's declaration and publicly available documents provide almost all the evidence in support of, or in opposition to, summary judgment. The declaration of Plaintiffs' counsel submitted with their response states only that exhibits were exchanged timely, and that he appeared in person for trial and "offered to argue how much weight the court should give to the evidence plaintiffs' [*sic*] produced." (Ptfs' Decl of Mangan at 1.) The county does not contest these facts. At no time have Plaintiffs contested the statements in the county's declaration or in the exhibits attached to the county's declaration. *See* TCR 47 C ("The [party opposing summary judgment] has the burden of producing evidence on any issue raised in the motions as to which the adverse party would have the burden of persuasion at trial."). The court concludes that no genuine issue of material fact exists.

B. *Issue*

Should the court dismiss Plaintiffs' appeal, without deciding the case on the merits--*i.e.* without determining any underlying issues such as property value?

C.    *Legal Background*

   1.  Salisbury *addresses factual record and standard of review on dismissal.*

As the court explained to the parties at the October 23, 2023, case management

conference in this division, review of a magistrate's decision to dismiss on procedural grounds is

governed by the court's decision in *Salisbury*. Pursuant to that decision, "the Regular Division's

initial task in reviewing a magistrate's decision of dismissal is to determine whether that

dismissal was proper.  * * * If so, this division will likewise dismiss the appeal and issue a

judgment against the party dismissed."  *Salisbury*, 24 OTR at 505-06.  If dismissal was not

appropriate, this division will proceed to consider underlying issues such as property value.  *See*

*id.* at 506.

*Salisbury* determined the following regarding the Regular Division's review of a

magistrate's dismissal:

- *Facts.*  The Regular Division relies on evidence that the parties present *to the Regular Division* relating to facts (1) existing at the time of the magistrate's decision, and (2) relevant to dismissal.  It is not relevant whether the magistrate actually was informed of the facts presented to this division, so long as the facts existed at the time of the dismissal.  *See id.* at 507.

- *Standard of review.*  The Regular Division is required to review a magistrate's decision *de novo.  See id.* at 506-07; *see also Village at Main Street Phase II v. Dept. of Rev.*, 356 Or 164, 167, 339 P3d 428 (2014) (citing ORS 305.430(1) ("Proceedings before the magistrate division shall not be reported.")).  No basis exists for the Regular Division to defer to the magistrate's decision.  Rather, this division decides the question of dismissal anew.

   2.  *Whether Regular Division must use the Magistrate Division's procedural standards in ORS 305.501(4)(a).*

In *Salisbury*, this division did not have occasion to decide whether or how to apply the

procedural standards that ORS 305.501(4)(a) prescribes for magistrates.  At the hearing on this

motion, counsel for Plaintiffs argued that the magistrate's dismissal was contrary to some or all

of those standards. The court now analyzes whether this division is required to apply them when reviewing a magistrate's dismissal, and if so, what the standards mean.

The answer to the first question is yes: in deciding the propriety of dismissal, this division must apply the procedural standards that govern the Magistrate Division. This is because the legislature has prescribed the Magistrate Division as the forum for relief in the first instance. *See* ORS 305.501(1) ("Except as provided in subsection (2) of this section, an appeal to the tax court shall be heard by a tax court magistrate unless specially designated by the tax court judge for hearing in the regular division."); *Wynne v. Dept. of Rev.*, 342 Or 515, 520-21, 156 P3d 64 (2007) (plaintiff may not "bypass" or "sidestep the Magistrate Division" or "evade the legislatively prescribed scheme for review and remediation of her property tax valuation appeal"). Thus, while the parties must create a record in the Regular Division of facts relevant to dismissal, the Regular Division must decide *de novo* whether, on those facts, a decision of dismissal satisfies the standards that the legislature has laid out for magistrates.

3. *Interpretation of procedural standards in ORS 305.501(4)*

The court proceeds to analyze the meaning of the principal statute governing procedures in the Magistrate Division:

> "Subject to the rules of practice and procedure established by the tax court, a magistrate is not bound by common law or statutory rules of evidence or by technical or formal rules of procedure, and may conduct the hearing in any manner that will achieve substantial justice. A hearing may be conducted in person or by telephone. Magistrates may confer with each other in order to reach a decision on any matter."

ORS 305.501(4)(a).

The first sentence provides guidance to the magistrates in three parts. First, the opening phrase "[s]ubject to" is a clear direction to magistrates to apply "the rules of practice and procedure established by the tax court," notwithstanding the remaining provisions of the

sentence. The court has previously construed this phrase to mean that, while the Magistrate Division is

> "intended to conduct its proceedings in an informal manner relatively free of technical rules * * * it must have rules by which the cases are administered. Those rules have been established by the Tax Court and were designed with fundamental notions of justice and fairness in mind. It should be unnecessary to note that these rules must be complied with. They are necessary both for the efficiency of the court and fairness to the parties."

*Dept. of Rev. v. Ritchie Chevron, Inc.*, 14 OTR 406, 408 (1998) (internal citation omitted). The second part of the sentence lists types of rules that do *not* bind a magistrate: rules of evidence (including those codified in statute and those developed pursuant to case law) and "technical" or "formal" rules of procedure. The third part of the sentence authorizes a magistrate to conduct the hearing in "any manner that will achieve substantial justice." Neither party claims that any specific portion of text within the first sentence of ORS 305.501(4)(a) is unclear. The court finds, however, that, the sentence as a whole, and in particular the final phrase, "achieve substantial justice," requires further analysis. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (prescribing examination of text, context, and any proffered legislative history; allowing resort to maxims if text remains ambiguous).

a. Gaines analysis

*Analysis of statutory text.* The court has found no definition of the phrase "substantial justice," or its component words, in the court's organic statute, nor has the court found a definition of the phrase in dictionaries contemporaneous with the 1995 law that created ORS 305.501(4)(a). *See* ORS 305.404 to 305.560; Or Laws 1995, ch 650, § 11. Turning to the individual terms, the definition of "justice" in *Webster's Third New International Dictionary*

(*Webster's*) (unabridged ed 1993) incorporated the concepts of impartiality and fairness.[4]

"Fairness" was defined as "impartial treatment."[5] Impartiality, in turn, was defined as "freedom

---

[4] The 1993 edition defined "justice" as follows:

"1a: the maintenance or administration of what is just : impartial adjustment of conflicting claims : the assignment of merited rewards or punishments : just treatment <meting out evenhanded [justice]> <the natural aspiration for [justice] in the human heart — W. A. White> <a splendid example of divine [justice] — M. W. Fishwick> <social [justice]> b [M[idle] E[nglish] *justice, justise*, fr[om] A[nglo-]F[rench] & M[edieval ]L[atin]; A[nglo-]F[rench] *justice*, fr[om] M[edieval ]L[atin] *justitia*, fr[om] L[atin]] : a person duly commissioned to hold courts or to try and decide controversies and administer justice: as (1) : a judge of the Supreme Court of Judicature in England, or formerly of the Court of King's Bench, Common Pleas, or Exchequer (2) : a judge of a common-law court or a superior court of record (3) : a justice of the peace : an inferior magistrate <a police [justice]> <traffic court [justice]> c(1) : administration of law : the establishment or determination of rights according to the rules of law or equity (2) : infliction of punishment <promises the indulgence of the jury to the husband who has himself executed [justice] — H. M. Parshley> 2a(1) : the quality or characteristic of being just, impartial, or fair : FAIRNESS, INTEGRITY, HONESTY <possessed a keen sense of honor and [justice]> <pointed out, with equal [justice], that … there are good businesses and bad — D. W. Brogan> <"it was nobody's fault …," she added, with scrupulous [justice] — Ellen Glasgow> <the same standards used in steel must in [justice] be applied to other industries — Mary K. Hammond>

"(2) : the principle or ideal of just dealing or right action <the courts are not helped as they … ought to be in the adaptation of law to [justice] — B. N. Cardozo>

"(3) : conformity to such principle or ideal : righteousness <defends the [justice] of his cause> b(1) *in Platonism* : the condition of harmony existing in a state between its members when each citizen occupies a place in accordance with his merit : the highest of the four cardinal virtues (2) in *Aristotelianism* : the practice of virtue toward others — see COMMUTATIVE JUSTICE, DISTRIBUTIVE JUSTICE, RETRIBUTIVE JUSTICE

"(3) : that virtue which gives to each his due c(1) : the quality of conforming to positive law (2) : the quality of conforming to positive law and also to divine or natural law 3: conformity to truth, fact, or reason : CORRECTNESS, RIGHTFULNESS <complained with [justice] that English waxes and wanes like the moon — *English Language Arts*> <admitted that there was much [justice] in these observations — T. L. Peacock> — bring to justice: to cause to be brought before a proper tribunal for trial — do justice 1 *obs*[olete] : to pledge in drinking

"2a: to do what is just : administer justice : act justly <longed to *do justice* in the world — *Time*> b: to treat fairly or according to merit <to *do* the man *justice*, his writing is brilliant> c(1) : to treat or handle adequately or properly <not *doing* full *justice* to his material — Carl Van Doren> <a full schedule may not permit him to *do justice* to his studies — Bates Boyle> <open for experienced salesmen who can *do justice* to America's outstanding line of small leather goods — *Luggage & Leather Goods*>

"(2) : to consume in a manner showing due appreciation <*do* the food *justice*> <after he likewise had *done* the liquor *justice* — Winston Churchill> 3: to acquit in a way that is worthy of one's powers <in the concerto he clearly did not *do* himself *justice*>."

*Webster's* at 1228.

[5] *Webster's* at 816 defined "fairness" as follows:

"1: the quality or state of being fair *esp*[ecially] : fair or impartial treatment : REASONABLENESS <the guarantees of [fairness] contained in the judicial process — *Harvard Law Rev*[iew]> 2: the degree of streamlining (as of an airplane)."

from bias or favoritism."[6] "Substantial" was defined as "not seeming or imaginary : not illusive," as "having a solid or firm foundation : soundly based : carrying weight," and "of or relating to the main part of something."[7] The verb in this part of the sentence also is of note: to "achieve" meant to "bring to a successful conclusion" or to "get as the result of exertion."[8] From these definitions, the court concludes that the plain meaning of the requirement to "achieve substantial justice" was that the magistrate use a process that is free of bias or favoritism to deliver a result that, in the main and despite any absence of procedural nuance, is soundly based on a foundation of law and facts.

### (1) Statutory context: other parts of Magistrate Division law

---

[6] The full definition of "impartiality" read:

"the quality or state of being impartial : freedom from bias or favoritism : DISINTERESTEDNESS, FAIRNESS <the [impartiality] of the scientific spirit — John Dewey> <with wonderful [impartiality], the play admits shenanigans and sentiment — *Time*>."

*Webster's* at 1131.

[7] The full definition of "substantial" read:

"1a: consisting of, relating to, sharing the nature of, or constituting substance : existing as or in substance : MATERIAL <[substantial] life> <the [substantial] realities> <most ponderous and [substantial] things — Shak[espeare]> b: not seeming or imaginary : not illusive : REAL, TRUE <the [substantial] world> <a mere dream neither [substantial] nor practical> c: being of moment : IMPORTANT, ESSENTIAL 2a: adequately or generously nourishing : ABUNDANT, PLENTIFUL <set a [substantial] table> <after that too [substantial] dinner> b: possessed of goods or an estate : moderately wealthy : WELL-TO-DO <a [substantial] man> *often* : having a good and well-maintained income-producing property <a [substantial] farmer> <the more [substantial] tradesmen> c: considerable in amount, value, or worth <made a [substantial] gain on the transaction> 3a: having good substance : firmly or stoutly constructed : STURDY, SOLID, FIRM <a [substantial] house> <[substantial] cloth> b: having a solid or firm foundation : soundly based : carrying weight <a [substantial] argument> <[substantial] evidence> 4a: being that specified to a large degree or in the main <a [substantial] victory> <a [substantial] lie> b: of or relating to the main part of something."

*Webster's* at 2280.

[8] *Webster's* defined "achieve" as follows:

"1a: to bring to a successful conclusion : carry out successfully : ACCOMPLISH <*achieving* his purpose> b *obs*[olete] : to cause to end : make to cease : bring about the end of : FINISH 2: to get as the result of exertion : succeed in obtaining or gaining : WIN, REACH, ATTAIN <he *achieved* greatness>."

*Webster's* at 16.

The court turns to statutory context, which includes other portions of the same law. *See, e.g.*, *State v. February,* 361 Or 544, 550-51, 396 P3d 894, 900 (2017) ("Our consideration of context includes the structure of a statute as a whole."); *Wetherell v. Douglas County*, 342 Or 666, 678, 160 P3d 614, 620 (2007) ("This court does not look at one subsection of a statute in a vacuum; rather, we construe each part together with the other parts in an attempt to produce a harmonious whole." (internal quotation marks omitted).).[9] The law creating the Magistrate Division suggests that the legislature expected magistrates to focus on overall fairness and to take a pragmatic approach. For example, the legislature did not expressly require magistrates to be lawyers. *See* Or Laws 1995, ch 650, § 2 ("An individual who is appointed as a tax court magistrate shall be a citizen of the United States and a resident of this state and competent to perform the duties of the office."). On the other hand, the legislature did expect the Magistrate Division to make mediation available, and even allowed magistrates to require it. *See id.,* § 11 ("A party to the appeal may request mediation, or the tax court on its own motion may assign the matter to mediation."). As mediation requires both parties to agree on a resolution and typically involves compromise, the reference to mediation supports the plain meaning of "substantial justice." *See Webster's* at 1228, 2280.

(2) Statutory context: workers' compensation appeals statute

Context also includes other related statutes in existence at the time of the 1995 legislative session. *See, e.g.*, *State v. Klein*, 352 Or 302, 309, 283 P3d 350, 354 (2012) (a statute's context includes "related statutes"); *State v. Cloutier*, 351 Or 68, 98–100, 261 P3d 1234, 1250–51 (2011)

---

[9] Relevant context also includes any prior law that the new law amends or replaces. *See, e.g.*, *Kohring v. Ballard*, 355 Or 297, 307–09, 325 P3d 717, 724–26 (2014)(tracing history of venue legislation); *State v. Ziska*, 355 Or 799, 806, 334 P3d 964, 967–68 (2014) ("Analysis of the context of a statute may include prior versions of the statute."). The 1995 law creating the Magistrate Division repealed the prior administrative hearing process conducted by Defendant. *See* Or Laws 1995, ch 650, § 114(1) § 1 (repealing *former* ORS 305.115 (1993) and *former* 305.283 (1993) governing appeals processes). The court has found no provisions in the repealed laws, or in the administrative rules thereunder, that resemble the text of the first sentence of ORS 305.501(4)(a).

(examining other sentencing statutes' use of the word "maximum" to inform meaning of the word used in sentencing appellate review statute); *State v. Carr*, 319 Or 408, 411-12, 877 P2d 1192, 1194 (1994) ("Context includes other related statutes."). The directive to magistrates in ORS 305.501(4)(a) closely resembles contemporaneous directives to the Workers' Compensation Board, and to referees employed by the board, when conducting hearings on various kinds of claims:

> "Except as otherwise provided in this section and rules of procedure established by the board, the referee is not bound by common law or statutory rules of evidence or by technical or formal rules of procedure, and may conduct the hearing in any manner that will achieve substantial justice."

ORS 656.283(7) (1993); *see also* ORS 147.155(1) (1993) (authorizing Workers' Compensation Board to review Department of Justice orders regarding crime victim compensation claims); ORS 147.155(5) (1993) ("The board is not bound by rules of evidence or by technical or formal rules of procedure, and may conduct the hearing in any manner that will achieve substantial justice.").

(3) Statutory context: case law under workers' compensation appeals statute

Judicial opinions interpreting the workers' compensation procedural statutes also form part of the context of the 1995 Magistrate Division law, to the extent that those opinions were published and available to legislators. *See, e.g.*, *Keller v. Armstrong World Indus.*, Inc., 342 Or 23, 35, 147 P3d 1154 (2006) (in construing statutes of limitation, the court considered its prior construction of other, similarly worded, statutes of limitation); *Oregon Cable Telecommunications v. Dept. of Rev.*, 237 Or App 628, 637–38, 240 P3d 1122 (2010) (analyzing prior court interpretation of related statute as part of contextual analysis). Unsurprisingly, in multiple cases the appellate courts had interpreted the language in ORS 685.283(7) as a grant of discretion to the board, including its referees, to admit testimony or documents into evidence

notwithstanding statutory or common-law prohibitions. *Matter of Compensation of Brown*, 51 Or App 389, 394, 625 P2d 1351 (1981) ("ORS 656.283[(7)] gives the referee broad discretion concerning the admission of evidence at the hearing."). The appellate courts generally upheld admission of evidence that had "some probative value." *Lucke v. State Compensation Dept*., 254 Or 439, 442-43, 461 P2d 269 (1969) (upholding hearing officer's admission of physician report that was "abstract" and not based on an examination of claimant; concluding that exhibit "had some probative value"); *see also, e.g., Scheller v. Holly House*, 125 Or App 454, 457, 865 P2d 475 (1993), *rev den*, 319 Or 36, 876 P2d 782 (1994) (upholding board's decision on reconsideration to admit medical reports as evidence of disability even though reports had been prepared only after issuance of reconsideration order); *Cristofaro v. State Acc. Ins. Fund*, 19 Or App 272, 276, 527 P2d 412 (1974) (upholding hearing officer's and board's admission of medical report although author had died before the hearing). With similar reasoning, the Court of Appeals upheld a referee's exclusion of rebuttal evidence where the referee had "removed * * * from consideration" the matter to which the evidence related. *Brown*, 51 Or App at 394.

This court now considers those cases in which the Court of Appeals *reversed* agency decisions in which the board or a referee had *declined* to admit testimony or evidence on the basis of evidentiary or procedural rules. The court scrutinizes those cases because Plaintiffs suggested at oral argument that the magistrate in this case had inappropriately relied on technical evidentiary rules in dismissing their appeal. (Statement of Michael Mangan, Oral Argument, Feb 27, 2024, 10:28.)

The Court of Appeals reversed the board on two such issues in *Armstrong v. SAIF*, 67 Or App 498, 578 P2d 777 (1984). First, the board relied on a later-repealed statutory hearsay exception during a hearing to determine whether the board had mailed its order denying the claimant's claim as required by law. The claimant's attorney testified to the board about facts

relating to the way he received and processed mail, including his office's practice of date-stamping incoming mail, the date he first learned of the existence of the order, and the absence of a copy of the order in his files. *See id.* at 501. The court noted that the State Accident Insurance Fund (SAIF) "objected to some of the evidence at the hearing on hearsay grounds and to the testimony of claimant's attorney as incompetent under the Evidence Code, presumably a reference to OEC 606-1."[10] The court sharply rejected SAIF's objection, quoting the "substantial justice" standard reprinted above, and declaring:

> "Technical hearsay objections have no place in a workers' compensation hearing. * * * OEC 606-1 also does not apply to a workers' compensation hearing, so we need not decide whether the exceptions to the rule, which permit an attorney to testify in certain circumstances, would make claimant's attorney's testimony admissible. We overrule the objections, noting, however, that our ultimate finding would be the same if we excluded the challenged evidence." *Id.* n 2.

The court turned to a second issue: the board's refusal to reopen the claimant's hearing to consider new evidence consisting of the diagnosis of a neurosurgeon. *Id.* at 502-03. The claimant, who several years earlier had been awarded partial disability, asked SAIF to reopen his claim because he believed that his condition was worsening. The claimant went to several physicians, none of whom supplied evidence of a worsening condition, and none of whom suggested surgery. SAIF declined to reopen his claim, and a referee upheld SAIF's decision. The claimant appealed to the board, and while that appeal was pending the claimant consulted a neurosurgeon, who diagnosed a herniated disc and prescribed surgery. *See id.* at 502. The board upheld the referee's decision on the ground that "the evidence could * * * reasonably have been discovered and produced at the hearing." *Id.* The court rejected the board's conclusion and remanded the case, finding the claimant's failure to present a diagnosis to the referee "readily

---

[10] *Former* OEC 606-1, ORS 40.340 (1983) provided: "An attorney representing a party litigant at trial shall not offer to be a witness or offer a member of the attorney's firm as a witness at that trial [subject to five exceptions]."

explainable: he had been to a number of physicians, none of whom suggested the need for surgery." The court noted other procedural barriers, including the claimant's illiteracy and age, that made it unreasonable to have expected him to "pursue difficult medical leads, at least when his doctors had not suggested that he do so." *Id.* at 503.

Similar to the hearsay ruling in *Armstrong*, in the later case of *Amos v. SAIF,* the court rejected a referee's reliance on "Lord Mansfield's Rule" as contrary to the statutory requirement to "achieve substantial justice." 72 Or App 145, 151, 694 P2d 998 (1985). The issue was paternity: whether one of the claimants, a minor, was the child of a man who had died in a workplace accident. When the child was conceived, the child's mother was in the process of divorcing a different man, and the decedent's paternity was never established by a court proceeding; therefore, the mother's then-spouse was presumed to be the father. *See id.* at 147. The mother sought to testify that the decedent was the child's father, but the referee determined that her testimony was barred because the evidentiary rule known as "Lord Mansfield's Rule," originating in eighteenth-century English common law, barred her from testifying that her husband lacked "access" to her. *See id.* at 151-52 & n 3. The court remanded with instructions to accept the child's claim, stating:

> "Whatever may be the present validity of 'Lord Mansfield's Rule' in other types of cases, that evidentiary rule should not be applied in workers' compensation hearings to exclude or ignore relevant evidence. The referee is 'not bound by common law or statutory rules of evidence or by technical or formal rules of procedure,' but must conduct the hearing in 'any manner that will achieve substantial justice.' ORS 656.283(6)."

*Id.* at 151. The court then considered the excluded evidence and found that there was "clear and convincing" evidence that, for purposes of the claim, overcame the presumption that the mother's spouse at the time of conception was the father of the claimant child.

### (4) Legislative history of Magistrate Division law

The legislative history of the 1995 law is in accord with the text and context, adding little

to the analysis relevant to this case. Proponents presented testimony from several sources alleging that the existing administrative process suffered from bias and a lack of impartiality. *See, e.g.,* Testimony, House Subcommittee on Civil Law & Judicial Administration, HB 2325, Feb 9, 1995 (statement of Elizabeth Bailey, representing Associated Oregon Industries); Tape recording, House Subcommittee on Civil Law & Judicial Administration, HB 2325, Feb 9, 1995, Tape 13, Side A, 19:00-23:00 (statement and questions of Rep. Del Parks, Chair); Testimony, Senate Judiciary Committee, HB 2325, Apr 24, 1995 (statement of David L. Canary, Tax Section, Oregon State Bar). However, without commenting specifically on the text that became the first sentence of ORS 305.501(4)(a), proponents also urged the legislature to preserve the relative informality and procedural simplicity of the administrative appeal process. Tape recording, Senate Committee on Judiciary, HB 2325, Apr 24, 1995, Tape 120, Side A, 4:57-5:22 (testimony of Rep, Kevin Mannix) ("The emphasis of the magistrate's division must be informality, just as we have that emphasis in the Department of Revenue. One of the strong points of the current adjudication system is the opportunity for informal decision making as to some of these issues. We don't want that baby thrown out with the bathwater, so to speak * * * " ); Tape recording, Senate Committee on Judiciary, HB 2325, Apr 24, 1995, Tape 120, Side A, 16:30-17:30 (testimony of Elizabeth Bailey, Associated Oregon Industries).

    b.     Conclusions

Based on the text, context and legislative history of the Magistrate Division law, the court interprets the first sentence of ORS 305.501(4)(a) as follows:

> (1) *Court rules.* A magistrate is required to conform to any applicable rules of practice and procedure established by the Tax Court for the Magistrate Division.[11]

---

[11] The court observes that the applicable rules may also include Regular Division rules in appropriate circumstances. *See* TCR-MD Preface, at 1 ("If circumstances arise that are not covered by a Magistrate Division rule, the rules of the Regular Division may be used as a guide to the extent relevant.").

(2) *Discretion as to rules of evidence or "technical or formal" rules of procedure.*

    a.   The directive that a magistrate conforming to those rules "is not bound by" rules of evidence or technical or formal rules of procedure and "may" conduct the hearing in any manner that will achieve substantial justice confers substantial discretion on magistrates to rely on documents, statements, or other materials that would not be admissible under the statutory or common-law evidentiary rules, but that likely have "some probative value."

    b.   However, that discretion is limited: a magistrate may not exclude otherwise probative testimony or documents from consideration solely because those items would be excluded under a "technical or formal" rule of evidence or procedure. Examples include rules that do not materially help the court determine the truth of asserted facts and that are not readily understood or that lack a clear connection to fairness, such as the attorney hearsay rule in *Armstrong* and "Lord Mansfield's Rule" in *Amos*.

(3) *Requirement to "achieve substantial justice."* A magistrate's discretion also is limited by the overarching goal to "achieve substantial justice," which requires impartiality and fairness. Achieving substantial justice may require a magistrate to relax procedural rules in order to address practical barriers faced by a litigant, as the Court of Appeals did in *Armstrong* by admitting the untimely but conclusive neurosurgeon diagnosis. However, because the legislature created the Magistrate Division as a part of Oregon's judicial branch, "substantial justice" requires the magistrate to not only consider the risk of actual prejudice to the non-proffering party, but also to adhere to the judicial duty to avoid actions that a reasonable person would expect to impair the fairness of a proceeding.[12] *See* Code of Judicial Conduct JR 3.3(C).

D. *Analysis*

The court now applies the foregoing three-part analysis of ORS 305.501(4)(a) to each action taken in the magistrate's Decision of Dismissal.[13]

    1.   *Denial of Plaintiffs' motion to offer remote testimony*

Defendant-Intervenor's Elliott declaration and the magistrate's Second Journal Entry, together with the Notice of Scheduled Court Proceeding, show that the trial had been set--some

---

[12] The workers' compensation cases involved an administrative tribunal and understandably do not discuss obligations arising under the Code of Judicial Conduct or other laws and rules governing courts.

[13] Unless otherwise indicated, the court's references to the Oregon Revised Statutes (ORS) are to 2021.

seven months in advance and in consultation with the parties--as an "in-person trial" at the courtroom in Salem and was scheduled for one and a half days.  Not until trial did Plaintiffs first inform the county and the court that they wished to testify by remote means.  They expressed that wish orally, through counsel.  The county objected.

  a. Does denial of Plaintiffs' motion conform to the Magistrate Division's rules?

The main relevant rule addressed remote proceedings as follows:

> **"Whether Proceeding to be Held by Remote Means or In Person.**  Pursuant to [Chief Justice Order] 2022-012 paragraph 2.b.(2), each magistrate may decide how trial, mediation, or oral argument may be held, either by remote means or in person or as the magistrate otherwise determines.  Parties may express their preference that the proceeding be held by remote means or in person at a case management conference or by filing a written request with the court."

Tax Court Rule-Magistrate Division (TCR-MD) 8 A(1)(c) (2023).[14]  The rule thus authorizes the magistrate to decide whether a proceeding will be held by remote means or in person.  The rule provides two procedures by which parties "may express their preference," which implies that the

---

[14] The rule had been adopted pursuant to authority delegated in ORS 1.002(5)(a) (2022) (as amended by Or Laws 2022, ch 68, § 8 (effective Mar 23, 2022)).  The statute provided:

> "(a) Notwithstanding any other statute or rule to the contrary, the Chief Justice may direct or permit any appearance before a court or magistrate to be by telephone, other two-way electronic communication device or simultaneous electronic transmission.
> "(b) If an appearance is set to occur by electronic means as described in paragraph (a) of this subsection, a presiding judge may instead order that the appearance be in person if, upon the request of a party, the presiding judge determines that there is a particular need for an in-person hearing or that a party has a constitutional right to an in-person hearing.
> "(c) The presiding judge may delegate the authority described in this subsection to another judge of the court."

The Chief Justice Order referred to in the rule, CJO 22-012, provided in relevant part:

> "Tax Court proceedings may be conducted in person or remotely, by video or audio, at the determination of Tax Court Judge or that judge's designee."

CJO 22-012, § 2.b.(2) (Jun 23, 2022) (superseded, without change to relevant text, by CJO 23-028 (Aug 30, 2023).  On December 5, 2022, the Tax Court Judge issued an Order Adopting Revisions to Magistrate Division Rules that included the text of TCR-MD 8 A(1)(c) reprinted above, effective January 1, 2023.  Order Adopting Revisions to

Magistrate Division Rules at 6, Dec 5, 2022, *available at* https://www.courts.oregon.gov/rules/Documents/TAX-OrderMagistrateRulesJan2023.pdf.

magistrate must consider such a request if a party uses one of those procedures. The rule does not require a magistrate to consider a party's request if not made by one of the prescribed procedures.

In this case, Plaintiffs did not request a second case management conference to seek to testify by remote means, nor did they file any written request. When trial was about to begin, counsel for Plaintiffs apparently expected the court to simply ignore its prior order by allowing remote testimony because Plaintiffs were "out of town." The court concludes that the rule does not require the magistrate to grant the request in that circumstance and over the county's objection; thus, the decision to deny it conforms to the rule.[15]

  b.  Does denial of Plaintiffs' motion reflect an improper adherence to common-law or statutory rules of evidence or to technical or formal rules of procedure, or otherwise violate the requirement to "achieve substantial justice"?

Although the rule does not require a magistrate to consider a party's last-minute, oral request to change the means of conducting a proceeding, neither does the rule prohibit the magistrate from granting such a request. Because the rule preserves the magistrate's choice, the rule does not override the requirement that the magistrate comply with the second and third parts of the first sentence of ORS 305.501(4)(a). This division must, therefore, consider whether the magistrate's denial of Plaintiffs' motion to appear remotely resulted in the exclusion of evidence that had "some probative value," and whether the denial improperly adhered to common-law or

---

[15] The court notes that the decision to exclude Plaintiffs' testimony in the circumstances described also conforms to TCR-MD 21 A, which authorizes a magistrate to impose a sanction for failure to comply with an order or directive:

"The court may enforce any decision, order, judgment, or other statement directing a party to perform a specific act by imposing sanctions on the party refusing or neglecting to comply. Sanctions may include, but are not limited to, dismissal of the case, placing the noncompliant party in default, and sanctions for contempt as authorized by statute."

The record in this division does not indicate that the county requested a sanction or that the magistrate relied on the sanctions rule in denying Plaintiffs' motion.

statutory rules of evidence or to technical or formal rules of procedure, or otherwise violated the requirement to "achieve substantial justice."

Plaintiffs' testimony likely would have had some probative value, assuming that they would have testified to facts relevant to the value of their property. Based on the record in this division, it appears that they would have testified to construction defects that diminished the property's value. Nothing in the record suggests that they would have qualified as valuation experts or as experts on construction rules or techniques, or damage assessment.

There is nothing "technical or formal" about barring Plaintiffs from testifying in this case. The parties discussed trial in a case management conference, and the court memorialized the discussion in a one-page writing that included the sentence, "An in-person trial was set for one and a half days beginning 9:00 a.m. on Tuesday, May 9, 2023." (Def-Inv's Decl of Elliott, Ex D at 1.) The ruling simply enforces the order.[16]

The ruling also "achieve[s] substantial justice." The assessor's witnesses and counsel are two counties away from the courtroom where trial was set. They traveled to Salem for a 9:00 a.m. trial in compliance with the order. Plaintiffs sent their lawyer but stayed away, with no more explanation than that they were "out of town." Based on the record before this division, allowing Plaintiffs to testify by remote means--contrary to the court's months-old order, and with no prior notice to the court or opposing counsel--reasonably could have been seen as an

/ / /

/ / /

---

[16] The court's decision today says nothing about the relative propriety of conducting hearings, trials, or other proceedings in person, by remote means, or by some blend of both. Many factors may weigh in favor of, or against, a particular means of proceeding, such as distance from the court, the availability of adequate technology, an individual participant's particular barriers, and the need to create a "level playing field." The magistrate has discretion to consider all relevant factors when determining the manner of proceeding in a particular case. Plaintiffs here do not argue that the magistrate acted improperly in setting the case for trial in person.

expression of bias or partiality in Plaintiffs' favor, contrary to the requirement to achieve substantial justice.[17]

At oral argument in this division, Plaintiffs forcefully asserted that granting the county's motion would violate a longstanding practice in this court of allowing a property owner to testify as to the property's value, even if the owner is not qualified as an expert in valuation. (Statement of Michael Mangan, Oral Argument, Feb 27, 2024, 10:29.) This argument misses the mark entirely. The admissibility of an owner's testimony as to the property's value is firmly established in Oregon Supreme Court precedent that reaches well beyond property tax law. *See Hanns v. Friedly*, 181 Or 631, 641, 184 P2d 855 (1947) ("It is a general rule that the owner of property is regarded as qualified to testify as to its value, and that he may so testify without any foundation being laid other than the fact of his ownership."). The Court of Appeals reiterated the long-standing nature of this principle in *Northwest Natural Gas Co. v. Shirazi*. 214 Or App 113, 120, 162 P3d 367, 371 (2007) ("It is well settled that the owner of property can testify as to the value of his or her own property and to the diminution in its value resulting from, for example, the construction of a nearby cement plant."). This court's ruling has nothing to do with the evidentiary rules governing Plaintiffs' status as owners of the property; it addresses only the preliminary, procedural question whether a magistrate must allow a witness--any witness--to testify by a means that is different from the means prescribed by a prior order.

2.    *Exclusion of proffered exhibits*

Plaintiffs also object to the magistrate's ruling that the documents they proffered as

---

[17] The magistrate's decision states that "the trial had been scheduled as an in-person proceeding at Plaintiffs' request * * *." (Ptfs' Compl, Ex 1 at 1-2.) Of course, if that statement is accurate, granting Plaintiffs' request to appear by remote means would create an even greater appearance of unfairness. However, the court does not assume the accuracy of the magistrate's statement, because neither party presented testimony of a witness, or other evidence, on that point.

exhibits would not be considered as evidence of the value of Plaintiffs' property. The court now applies the three-part analysis under ORS 305.501(4)(a) to these rulings.

a. Does exclusion of the exhibits conform to the court's rules?

As to the first part, the court concludes that no applicable court rule specifically addresses any of the rulings. Magistrate Division Rules (TCR-MD) 11 and 12 govern presentation of evidence, trial procedure, and the marking and exchange of exhibits, but neither rule addresses the exclusion of proffered documents or testimony based on their probative value or other evidentiary considerations. Magistrate Division Rule 11 B states that the Magistrate Division "generally follows the testimony and trial procedure guidelines stated in [Regular Division] Rules 56 through 61." However, the Regular Division rules likewise do not address exclusion for reasons rooted in evidentiary principles; rather, this division applies the Oregon Evidence Code and common-law rules of evidence. *See Shevtsov v. Dept. of Rev.*, 25 OTR 176, 177 (2022) (Oregon Evidence Code applies in Regular Division); ORS 40.015, 1981 conference committee commentary at subsection (2) ("While the Oregon Evidence Code applies to all proceedings, it is not a compendium of all the rules of evidence that apply to proceedings. A number of evidential issues are not addressed, and many others are treated in a general fashion. These are left for judicial lawmaking.")

b. Does exclusion of Plaintiffs' exhibits reflect an improper adherence to common-law or statutory rules of evidence or to technical or formal rules of procedure, or otherwise violate the requirement to "achieve substantial justice"?

The court proceeds to apply the second and third parts of the first sentence of ORS 305.501(4)(a), determining whether any of the magistrate's rulings reflect an improper adherence to common-law or statutory rules of evidence or to technical or formal rules of procedure, or otherwise violate the requirement to "achieve substantial justice."

(1) Do the excluded exhibits have probative value?

The court starts by determining whether the proffered exhibits would have had some probative value if admitted. The court finds that, at least as a group, the exhibits meet the low discretionary threshold to be considered as evidence under the "substantial justice" standard, notwithstanding substantial gaps in their persuasive value.

The appraisal report concludes a value of $1,906,000, nearly double the $1,000,000 value Plaintiffs sought on appeal in the Magistrate Division.[18] Moreover, there is a two- to four-year gap between the effective date of the appraisal report (January 1, 2017) and the assessment dates of the tax years on appeal (January 1, 2019, January 1, 2020, and January 1, 2021). The timing gap has great significance because the "annual and inexorable" process of property tax assessment requires the assessor to determine and record the value of each parcel or item of taxable property each year, "as of January 1, at 1:00 a.m. of the assessment year * * *." *Multnomah County Assessor v. Portland Devel. Comm.*, 20 OTR 395, 397 (2011); ORS 308.210(1). *See* ORS 308.007(2) ("the assessment year beginning January 1 corresponds to the tax year beginning July 1 of the same calendar year"). For this reason, an appraisal report that provides an opinion of value "as of" any date other than the January 1 assessment date for the year at issue immediately "leaves the court to wonder" about the probative value of the appraisal report. *Yarbrough v. Dept. of Rev.*, 21 OTR 40, 45 (2012) (18-month gap between

/ / /

---

[18] In this division, Plaintiffs have failed to specify what value they seek, apparently because, at the time of their complaint, they wanted this division to remand the case to the Magistrate Division. (*See* Ptfs' Compl at 2 (requesting a "judgment [*sic*] declaring that the magistrate [*sic*] should be vacated and that a hearing should be conducted to weigh the plaintiffs' testimony and the earsay [*sic*] evidence provided * * *.").) As counsel for Plaintiffs should have been aware, the court's organic statute provides for trial *de novo* in this division and says nothing about remand. *See Salisbury*, 24 OTR at 505-09. By the time of oral argument, Plaintiffs seemed to agree that if this case is not dismissed pursuant to *Salisbury*, it should proceed as a *de novo* appeal in the Regular Division. (Statement of Michael Mangan, Oral Argument, Feb 27, 2024, 11:14.) Nonetheless, Plaintiffs never clarified what value they seek in this division.

valuation and assessment dates rendered appraisal report unreliable, without correlating evidence).[19]

The Multnomah complaint has no probative value by itself and does nothing to bridge the value gap or the timing gap between the appraisal report and the results Plaintiffs sought in the Magistrate Division for the tax years at issue. First, the Multnomah complaint is nothing more than a set of allegations by Plaintiffs. Their interests in a construction defect lawsuit align with their interests in this case: to prove a lower property value. Plaintiffs did not seek to introduce any evidence of the position taken by any of the defendants, much less findings of fact by a jury or a judge, or even any evidence of the end result of the litigation. Second, the $900,000 amount of damages alleged is, on its face, an "estimate[ ]," and this estimate includes an unspecified amount for "loss of use due to delays," an amount that might not count in an evaluation of fair market value. (Multnomah complaint at 4).

The two Forensic Reports describe construction defects at the subject property, but upon reviewing them this division agrees with the magistrate's statement that they do not "quantify[ ] the cost to cure" the alleged defect. (Ptfs' Compl, Ex 1 at 1-2.)

Despite these shortcomings, the court finds it conceivable that one or more witnesses relying in part on the proffered exhibits and in part on memory or other reasonably reliable nondocumentary information, could have constructed a coherent case-in-chief in support of a value reduction along the lines Plaintiffs were seeking. For this reason, the court finds that the

/ / /

---

[19] Even an *actual sale of the subject property*, ordinarily a strong indicator of fair market value, can lose probative value based on the amount of time between the sale and the assessment date. Correlating the sale price to value requires analysis of whether "conditions affecting value" are similar on each of the two dates. *Sabin v. Dept. of Rev.*, 270 Or 422, 426-27, 528 P2d 69 (1974); *see also Oakmont LLC v. Dept. of Rev.*, 359 Or 779, 794, 377 P3d 523 (2016); *Level 3 Communications LLC I v. Dept. of Rev.*, 23 OTR 87, 98-105 (applying *Sabin* and *Oakmont*).

proffered exhibits had "some probative value." It would be improper to exclude them as irrelevant.

(2) Reliance on technicality rather than fairness and impartiality; achieving substantial justice

Because the proffered exhibits had sufficient probative value to defeat exclusion on that basis alone, the *Armstrong* and *Amos* standards require the court to analyze whether excluding them is consistent with the overall requirement to achieve substantial justice without improperly adhering to common-law or statutory rules of evidence or formal rules of procedure. The court finds that excluding the exhibits is proper.

The county made three relevant objections: inability to cross-examine the authors of the proffered exhibits, their status as hearsay, and inability to authenticate them. (*See* Def-Inv's Decl of Elliott at 4, ¶13 (county objected because "no one [was] available to cross-examine or authenticate" the documents, and because of "the hearsay nature of the exhibits * * *.").) Of these objections, this division focuses on the unavailability of a witness to be cross-examined about the exhibits, which this court considers fundamental:

> "Safeguards in the trial procedure, such as the immediate cross-examination of the witness and the opportunity of the trier of fact to observe the demeanor of the witness who swears or affirms under the penalty of perjury to tell the truth, are designed to reduce * * * risks [of misperception, misrecollection, misstatement, and insincerity]."

*State v. Carlson*, 311 Or 201, 212, 808 P2d 1002 (1991); *see* Kenneth S. Broun, et al., 2 *McCormick on Evidence* § 245 (8th ed) ("In perhaps his most famous remark, Wigmore described cross-examination as 'beyond any doubt the greatest legal engine ever invented for the discovery of truth.'") (footnotes omitted).

The absence of any witnesses at all likely presents a substantial problem in any case. But in this case, the problem is compounded because three of the four proffered exhibits were detailed expert reports, and nothing in the record suggests that Plaintiffs sought to present their

authors as witnesses. The appraisal report, by a certified appraiser, states that its conclusion is based primarily on the purported comparability of seven other properties that he selected. (*See* appraisal report at 6 ("All sales are weighted approximately equally, due to relatively low gross adjustments; particularly for a property as complex as this. Cost approach is weighted x1, while the sales comparison approach is weighted x3.").) The decisions to select particular properties, with particular characteristics such as age, size, location, condition, and date of sale; and then to determine how much weight to give those findings relative to cost data, are matters of appraisal judgment. Similarly, each of the Forensic Reports presents findings of building code violations and "improper" or "nonconforming" installations or handling of materials and ways to correct them. (*See* Forensic Reports, *passim*.) To be sure, as the property owners, Plaintiffs generally would have been qualified to testify about the property value, but there is no indication that they had any meaningful insights into the many professional judgment calls on which the conclusions of these three exhibits are based.

Accordingly, the county's objection based on lack of access to cross-examination is nothing like the "[t]echnical hearsay objections" that the Court of Appeals rejected in *Armstrong* and *Amos*. The lawyer in *Armstrong* obviously had personal knowledge of the facts related to his own firm's recordkeeping practices; SAIF's objection was based only on a now-repealed set of exclusions specific to attorneys. *See Armstrong*, 67 Or App at 501 n 2; Or Laws 1987, ch 352, § 1 (repealing ORS 40.340). Likewise, the spouse in *Amos* had personal knowledge of the facts relevant to her son's paternity; the board excluded her testimony only because of a common-law hearsay rule discredited by a leading scholar. *See Amos*, 72 Or App at 151. The court concludes that, in the absence of any witnesses, let alone the ones with the expertise to defend the Appraisal

/ / /

/ / /

Report and the Forensic Reports, excluding the proffered exhibits achieves substantial justice and does not improperly rely on technicalities.[20]

At oral argument in this division, Plaintiffs contended that a ruling in favor of the county would make it impossible for a taxpayer to use a representative in the Magistrate Division to introduce the kinds of documentary evidence normally used in a valuation dispute because the representative could not authenticate the documents. (*See* Statement of Michael Mangan, Oral Argument, Feb 27, 2024, 10:41.) The court today draws no such line, and it would be wholly unreasonable to infer such a conclusion from today's decision. The several cases cited above provide authority for the wide discretion of a magistrate on evidentiary matters. *See Brown*, 51 Or App 389, 625 P2d 1351 (1981); *Lucke v. State Compensation Dept.*, 254 Or 439, 461 P2d 269 (1969); *Cristofaro v. SAIF*, 19 Or App 272, 527 P2d 412 (1974).[21]

Finally, Plaintiffs boldly argue that a ruling in favor of the county would deny more homeowners appealing to this division the chance for a *de novo* trial, because magistrates would be encouraged to dismiss more cases for lack of evidence, rather than hearing plaintiffs out and

---

[20] Nor is every hearsay objection a mere technicality that a magistrate is required to ignore. Concerns about hearsay may implicate impartiality and may even overlap with concerns about lack of access to cross-examination. *See id.* ("The lack of any opportunity for the adversary to cross-examine the absent declarant whose out-of-court statement is reported is today accepted as the main justification for the exclusion of hearsay."). Nevertheless, this division need not decide whether the county's objections based on hearsay and lack of authentication are overly technical, or whether they suffice as justification to exclude Plaintiffs' documents under the "substantial justice" standard. This order concludes only that excluding the documents achieves substantial justice and is not based on technicalities, because without access to cross-examination the court's factfinding ability as to the content of the documents would be materially impaired.

[21] Plaintiffs also make vague and confusing arguments about the role of counsel in this and other property tax appeals. Most notably, Plaintiffs' counsel declares that, at trial, he "offered to argue how much weight the court should give to the evidence plaintiffs' produced." (Ptfs' Decl of Mangan at 1.) Counsel never explains how an argument about what *weight* to give evidence would help the court decide whether to *admit* that evidence in the first place. In their response, Plaintiffs then suggest that their counsel would have *testified* about the proffered exhibits, but perhaps coyly, Plaintiffs never dispute the county's declaration that the only witnesses Plaintiffs proffered were themselves. (Ptfs' Response at 3 ("The Plaintiffs' attorney was present and prepared to offer argument about the evidence it timely exchanged. The Assessor might argue that attorneys are precluded from testifying as a witness. *See* TCR 57. However, none of the evidence, which was timely exchanged, was authored by the attorney such that he would be precluded as a witness.").)

ruling against them on the merits. (*See* Statement of Michael Mangan, Oral Argument, Feb 27, 2024, 10:39). The court rejects this overblown prediction because the facts here are extraordinary and, the court hopes, unlikely to be replicated. To prepare for trial, Plaintiffs assembled four exhibits that raised obvious and fundamental questions on their face: How does an appraisal report that concludes a value of $1,906,000 for 2017 prove that the same property was worth $1 million in 2019, 2020, or 2021? How do a list of code violations and construction defects, and a proposal for fixing them, support any particular value when the cost to cure is not stated? How, if at all, does the estimated damages claim in the construction defect case tie to diminution of the property value? Plaintiffs then selected only themselves to testify as witnesses, and none of the authors of the three expert reports proffered as exhibits. Having put all their eggs in that fragile basket, they left town before trial, disregarding the court's order to present *all* witnesses in person. The magistrate rightly rejected their last-minute, unjustified attempt to proffer remote testimony, after everyone else involved had shown up in person. That ruling precipitated a cascading failure because Plaintiffs now had no one to be cross-examined about any of the exhibits. The striking inadequacies of Plaintiffs' efforts are the more remarkable because Plaintiffs sought to have their property value reduced by $1,639,440--a considerable sum in absolute terms, and a sixty-two percent reduction compared to the 2021 roll value.

Returning to Plaintiffs' prediction that today's decision will create a pitfall for future litigants, the court finds that Plaintiffs' desultory approach strongly suggests that they failed to take the process in the Magistrate Division seriously. *Salisbury*, and the several cases it cites, already put parties on notice to avoid that behavior. The early decision in *Ritchie Chevron* applies the same standard to government litigants. *See* 14 OTR at 410-11 ("In essence, the department is arguing that parties who fail to comply with the rules of the court should not suffer any consequences. That cannot be."). Like prior cases, this one stands for the proposition that

the legislature created the Magistrate Division as a user-friendly initial forum for tax disputes, and, except for those cases specially designated to this division, it expected parties to use it.[22]

*See Wynne v. Dept. of Rev.*, 342 Or 515, 520-21 (2007). Now, therefore,

IT IS ORDERED that Defendant-Intervenor's Motion to Strike is denied; and

IT IS FURTHER ORDERED that Defendant-Intervenor's Motion for Summary Judgment is granted.

Dated this 27th day of September, 2024.

9/27/2024 3:53:11 PM

**Judge Robert T. Manicke**

---

[22] Parties that have a good-faith reason to move their case to the Regular Division without first going through trial in the Magistrate Division can ask to have their case specially designated to this division. *See* TCR 1 C(2). In stark contrast to the way Plaintiffs proceeded, parties in other cases regularly present this division with petitions to specially designate cases for hearing in this division at an early stage, often in the interest of saving the possible expense of two trial-level proceedings should there be an appeal from the Magistrate Division. While this division's special designation authority is discretionary, this division typically grants such requests if made jointly or without opposition.